UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

FORMAN HOLT ELIADES & RAVIN LLC
80 Route 4 East, Suite 290
Paramus, NJ 07652
(201) 845-1000
Proposed Attorneys for Charles M. Forman,
Chapter 7 trustee
Harry M. Gutfleish (HG-6483)

In Re:

THE RUSS COMPANIES, INC., et al.,[1]

              Debtors.

Chapter 7
Case No. 11-22471 (DHS)

```
┌─────────────────────────────┐
│           FILED             │
│  JAMES J. WALDRON, CLERK    │
│         MAY 12 2011         │
│   U.S. BANKRUPTCY COURT     │
│         NEWARK, N.J.        │
│  BY _____ DEPUTY      │
└─────────────────────────────┘
```

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING TRUSTEE TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS, <u>AND PERMITTING THE USE OF CASH COLLATERAL</u>

The relief set forth on the following pages, numbered two (2) through forty-two (42), is hereby **ORDERED.**

May 12, 2011

D. _____
USBJ

---

[1] The Debtors are The Russ Companies, Inc., Russ Berrie Company Investments, Inc., Russ Berrie U.S. Gift Inc., The Encore Group, Inc., Russ Berrie and Company Properties, Inc., and Russplus, Inc.

Page 2
Debtors:        The Russ Companies, Inc. *et al.*
Case No:        11-22471 (DHS)
Caption:        **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

Upon the Application for an Order or Orders authorizing the Trustee (a) to operate certain

of the Debtors, (b) to obtain post-petition financing (as described herein, the "Postpetition

Financing"), (c) to retain certain of the Debtors' employees, (d) to pay pre-petition employee

salary, wage, expense reimbursement and other employee obligations, (e) to continue the

Debtors' cash management system and (f) granting related relief (the "Application")[2] filed by

Charles M. Forman, as chapter 7 trustee (the "Trustee") in each of the above-captioned cases

filed by The Russ Companies, Inc., Russ Berrie Company Investments, Inc., Russ Berrie U.S.

Gift Inc., The Encore Group, Inc., Russ Berrie and Company Properties, Inc., and Russplus, Inc.

(each individually, a "Debtor" and collectively, the "Debtors") under chapter 7 of title 11 of the

United States Code (the "Bankruptcy Code"), and an interim hearing (the "Interim Hearing")

having been held on April 21, 2011 and a final hearing (the "Final Hearing") having been held on

May 12, 2011, each before this Court (the "Bankruptcy Court"), and due and sufficient notice of

the Application and the Interim Hearing and a Final Hearing having been given; and upon the

entire record made at the Interim Hearing and a Final Hearing before this Court; and the Court

having found good and sufficient cause appearing therefor,

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Credit Agreement or
Ratification Agreement (as such terms are defined herein).

Page 3
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

THE TRUSTEE STIPULATES AND THE COURT HEREBY FINDS, DETERMINES,

AND CONCLUDES THAT:[3]

A.      Jurisdiction.   The Bankruptcy Court has core jurisdiction over the above-

captioned chapter 7 cases (the "Chapter 7 Cases"), the Application, and the parties and property

affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Application

constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(8).

B.      Notice.   Notice of the Application and the Final Hearing was provided to all

secured creditors, the Debtors' twenty (20) largest unsecured creditors and the United States

Trustee, which constitutes due and sufficient notice thereof pursuant to Rules 2002 and 4001(b)

and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      Petition Date.   On April 21, 2011 (the "Petition Date"), the Debtors filed

voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  Pursuant to section 721 of

the Bankruptcy Code, the Trustee is authorized to operate the Debtors' business for a short period

of time in order to protect and preserve the assets of the Debtors and permit the Trustee to

liquidate them in the most effective and cost-efficient manner.

D.      Prepetition Credit Agreement.   Based upon information provided to the Trustee

and subject to paragraph 19 herein, the Trustee ratifies, acknowledges, admits, and confirms the

following, all as set forth more fully on Schedule 1 hereto:

---

[3] Findings of fact contained herein shall be construed as conclusions of law, and conclusions of law contained herein

Page 4
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

(a)     Pursuant to that certain Credit and Security Agreement, dated as of December 23,

2008 (as amended, modified, supplemented or restated from time to time, the "Credit

Agreement"), by and among each of the Debtors as borrowers, Richard D. Snow and Amram's

Distributing Ltd., as guarantors, and Wells Fargo Bank, National Association, acting through its

operating division Wells Fargo Capital Finance ("Wells Fargo" or the "Prepetition Lender") as

lender, Wells Fargo agreed to provide the Debtors with a revolving line of credit for working

capital purposes and to facilitate the issuance of documentary and standby letters of credit, in the

maximum aggregate principal amount of $25,000,000. To induce Wells Fargo to extend credit

to the Debtors under the Credit Agreement, each Debtor granted to Wells Fargo a lien and

security interest (the "Prepetition Liens") in substantially all of its assets, as more fully described

in the Credit Agreement (the "Prepetition Collateral"). As of April 21, 2011, the aggregate

outstanding indebtedness under the Credit Agreement is $13,006,694.69 (not including

prepetition interest accruing since April 1, 2011 and other additional charges and fees accrued

prepetition that are owed to the Prepetition Lender under the Credit Agreement)   (the

"Prepetition Obligations").

(b)     The Prepetition Liens are (i) valid, binding, perfected, enforceable liens on the

Prepetition Collateral and, subject to section 552 of the Bankruptcy Code, all postpetition

---

(continued...)

shall be construed as findings of fact.

Page 5
Debtors:    The Russ Companies, Inc. *et al.*
Case No:    11-22471 (DHS)
Caption:    **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the WF Adequate Protection Liens (as defined below), (B) the Carve-Out (as defined below and to which the WF Adequate Protection Liens and the Subordinated Adequate Protection Liens (as defined below) are subject), and (C) the Liens (as defined below).

(c)    The Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms, and no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Obligations exists. The Prepetition Obligations, and any amounts previously paid to the Prepetition Lender on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors, and the Trustee on behalf of the Debtors, do not have, hereby forever release, and are forever barred from bringing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Prepetition Obligations or against the Prepetition Lender or any of its predecessors in interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys, with respect to the Prepetition Obligations and any related guarantees.

(d)    The Prepetition Lender perfected its security interests and Prepetition Liens in and

Page 6
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statements,

instruments filed in federal, state, and county offices, mortgages, and other required documents

against the Debtors and such collateral with the proper federal, state, and county offices for the

perfection of such security interests and Prepetition Liens.

(e)       Each of the matters set forth in Schedule 1 attached to this Order and made a part

hereof, which Schedule (i) contains provision for the ratification of the Credit Agreement and

other prepetition Loan Documents, (ii) sets forth certain terms under which the Lender is making

the Postpetition Financing available to the Trustee, and (iii) amends certain provisions of the

Credit Agreement.

E.        <u>Subordinated Prepetition Notes.</u>

(a)       Pursuant to that certain secured promissory note dated December 23, 2008

(the "<u>Kid Note</u>"), Kid Brands, Inc. (f/k/a Russ Berrie and Company Inc.) ("<u>Kid</u>") asserts that

TRC delivered to it a promissory note in the original principal amount of $19,000,000.  Kid

further asserts that TRC's obligations under the Kid Note are secured by, *inter alia*, the

Prepetition Collateral, as more fully described in that certain Subordinated Security Agreement,

dated as of December 23, 2008 (the "<u>Kid Security Agreement</u>"), by and between Kid and the

Debtors.  Pursuant to (i) that certain Intercreditor Agreement by and between Wells Fargo and

Kid, dated as of December 23, 2008 (the "<u>WF/Kid Intercreditor Agreement</u>") and (ii) the Kid

Page 7
Debtors:       The Russ Companies, Inc. *et al.*
Case No:       11-22471 (DHS)
Caption:       **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS, AND (II) PERMITTING THE USE OF CASH COLLATERAL**

Security Agreement, Kid's security interest in the Prepetition Collateral is subordinated to Wells Fargo's interest in the Prepetition Collateral.

(b)     Pursuant to that certain Amended and Restated Subordinated Promissory Note dated December 23, 2008 (the "Hanes Note"), Eldridge C. Hanes ("Hanes") asserts that the Encore Group, Inc. ("Encore") delivered to Hanes a promissory note in the original principal amount of $500,000. Hanes further asserts that Encore's obligations under the Hanes Note are secured by, *inter alia*, the Prepetition Collateral, as more fully described in that certain subordinated Security Agreement dated as of December 23, 2008 (the "Hanes Security Agreement") by and between Hanes and the Debtors. Pursuant to the Hanes Security Agreement and that certain Subordination Agreement dated as of December 23, 2008 by and between Wells Fargo and Hanes (the "Hanes Subornation Agreement"), Hanes'ss interest in the Prepetition Collateral is subordinated to Wells Fargo's interests in the Prepetition Collateral. Pursuant to that certain Intercreditor Agreement by and between Hanes and Kid dated December 23, 2008, Hanes and Kid agreed, among other things, that their liens were secured on an equal, ratable and *pari passu* basis to the extent of the Debtors' respective obligations under the Kid Note and the Hanes Note.

Page 8
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

F.   <u>Cash Collateral</u>.  For purposes of this Order, "<u>Cash Collateral</u>" shall have the

meaning set forth in section 363(a) of the Bankruptcy Code.

G.   <u>Prepetition Lender's Consent</u>.  The Prepetition Lender consents to the Trustee's

use of the Cash Collateral and the priming of the Prepetition Liens by the Liens, solely on the

terms and conditions set forth in this Order, and in accordance with the budget attached hereto as

Exhibit 2 (the "<u>Budget</u>").  The adequate protection provided herein and other benefits and

privileges contained herein are consistent with and authorized by the Bankruptcy Code and are

necessary in order to obtain such consent.

H.   <u>Findings Regarding the Use of Cash Collateral</u>.

(a)   Good cause has been shown for the entry of this Final Order.  The Trustee has an

immediate and critical need to use the Cash Collateral in order to continue to operate the

Debtors' business for a short period of time in order to protect and preserve the assets of the

Debtors and permit the Trustee to liquidate them in the most effective and cost-efficient manner.

The Trustee's use of Cash Collateral has been deemed sufficient to meet the Trustee's immediate

liquidity needs, subject to the terms of this Order, and all other agreements, documents, notes, or

instruments delivered pursuant hereto or thereto or in connection herewith or therewith,

including, without limitation, the Budget.

(b)   The ability of the Trustee to have sufficient available sources of working capital

to continue the Debtors' business and maximize the value of the assets depends upon the

Page 9
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

Trustee's use of Cash Collateral. The Trustee has requested that the Prepetition Lender consent

to (i) the Trustee's use of Cash Collateral, solely in accordance with the terms of this Order and

the Budget, and (ii) the priming of the Prepetition Liens on the Prepetition Collateral to the

extent provided herein.   The Prepetition Lender is willing to provide such financial

accommodations on a superpriority and secured basis, as more particularly described herein.

(c)      Based on the record presented to the Court at the Interim Hearing and the Final

Hearing, good, adequate, and sufficient cause has been shown to justify the immediate grant of

the relief requested in the Application to avoid irreparable harm to the estate. The terms of the

Trustee's use of the Cash Collateral, as more fully set forth herein, are (i) fair and reasonable, (ii)

reflect the Trustee's prudent exercise of business judgment consistent with its fiduciary duties,

(iii) constitute reasonably equivalent value and fair consideration for the Prepetition Lender's

consent thereto, and (iv) are essential and appropriate under the circumstances of these Chapter 7

Cases. Entry of this Order is therefore in the best interests of the estate and all parties in interest

in these cases.

I.      Necessity for Postpetition Financing.

(a)      Good cause has been shown for the entry of this Order.

(b)      The Trustee needs to obtain postpetition financing to avoid irreparable

harm to the estate. Obtaining postpetition financing is in the best interests of the estate.

Page 10
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

(c)     The Trustee is unable to obtain (i) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code, as an administrative expense or (ii) secured credit allowable only under sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without granting to the Lender the Superpriority Claim (as defined below) and the Liens.

J.     <u>Reasonable Terms; Good Faith</u>.

(a)     The terms of the proposed postpetition financing (the "<u>Postpetition Financing</u>") and use of Cash Collateral are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties to the estates.

(b)     The Postpetition Financing and the terms of use of the Cash Collateral have been negotiated in good faith and at arm's-length.

(c)     All of the indebtedness and other obligations to the Lender (the "<u>Trustee Obligations</u>") arising under the terms and conditions of the Credit Agreement, as deemed amended and modified pursuant to this Order and all related guaranty, security and other agreements, documents, notes and instruments together with all exhibits, schedules, annexes and appendices thereto, delivered pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "<u>Trustee Loan Documents</u>") shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code. The Trustee Obligations and the Prepetition Obligations together are referred to as the "<u>Obligations</u>."

Page 11

Debtors:     The Russ Companies, Inc. *et al.*

Case No:     11-22471 (DHS)

Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
             AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
             OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
             OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
             SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
             COLLATERAL**

---

K.      Protections of Section 364(e) of the Bankruptcy Code. All of the credit extended

pursuant to the Trustee Loan Documents (including all of the Trustee Obligations) after entry of

this Order was extended by the Lender in good faith and in express reliance upon the protections

afforded to postpetition lenders under section 364(e) of the Bankruptcy Code, and accordingly,

all of the Trustee Obligations shall be entitled to the full protections of section 364(e) of the

Bankruptcy Code in the event this Order or any provision hereof is vacated, reversed, or

modified, whether on appeal or otherwise.  Upon execution and delivery of the Trustee Loan

Documents, they shall constitute valid and binding obligations of the Trustee, enforceable

against the Trustee in accordance with the terms of the Trustee Loan Documents, this Order, and

section 364(e) of the Bankruptcy Code.

The Prepetition Lender is permitting the use of its Cash Collateral and the priming of its

Prepetition Liens in good faith and in express reliance upon the protections afforded to

prepetition lenders pursuant to section 364(e) of the Bankruptcy Code and, accordingly, shall be

entitled to the full protections of section 364(e) of the Bankruptcy Code in the event this Order or

any provision hereof is vacated, reversed, or modified.

IT   IS   HEREBY   ORDERED,   ADJUDGED   AND   DECREED   EFFECTIVE

IMMEDIATELY, AND AGREED AMONG THE PARTIES, THAT:

1.      Authorization to Use Cash Collateral. Subject to the terms and conditions set

forth in this Order and the Trustee Loan Documents (including, without limitation, the WF

Page 12
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

Adequate Protection Obligations and the WF Adequate Protection Liens provided herein), upon

entry of this Order, the Trustee is authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy

Code, to use the Cash Collateral and the proceeds of the Postpetition Financing solely and

exclusively for the disbursements set forth in the Budget, for the period of time from the date

hereof, until the earliest to occur of (a) the date that this Order ceases to be in full force and

effect, or (b) the occurrence of the Termination Date in accordance with Paragraph 13 hereof, at

which time (i) all accrued interest and fees and all other WF Adequate Protection Obligations

shall, in each instance, be immediately due and payable, (ii) the Prepetition Lender shall have all

other rights and remedies provided in this Order and under applicable law, and (iii) the Trustee's

authority to use the Cash Collateral shall automatically terminate without further order or relief

from the Court. Notwithstanding anything herein to the contrary, and except as otherwise

provided herein, all of the rights, remedies, benefits, and protections provided to the Prepetition

Lender, Hanes and Kid under this Order shall survive the Termination Date. Wells Fargo and

the Trustee, on behalf of the Debtors, may at any time submit an amended Budget to be

considered by the Court at a hearing scheduled on not less than three (3) days' notice to Hanes

and Kid. The Budget may not be amended absent the consent of Wells Fargo.

2.      Limitations on Use of Cash Collateral. Subject to the terms and conditions of this

Order, the Prepetition Lender is willing to consent to the Trustee's use of Cash Collateral in

accordance with the Budget; provided that the Trustee's use of Cash Collateral shall be limited as

Page 13
Debtors:       The Russ Companies, Inc. *et al.*
Case No:       11-22471 (DHS)
Caption:       **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
               AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
               OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
               OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
               SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
               COLLATERAL**

---

follows: (i) until such time as the Obligations have been paid and satisfied in full, the proceeds of

the accounts receivable shall continue to be received and processed in accordance with the Credit

Agreement; and (ii) no Cash Collateral shall be utilized for the payment of professional fees,

disbursements, costs, or expenses incurred in connection with (x) asserting or preparing for any

claims or causes of action against the Prepetition Lender or the Lender, (y) challenging or raising

any defenses to the Trustee Obligations, the WF Adequate Protection Obligations, the Prepetition

Obligations, or the advances or other obligations under the Postpetition Financing, or (z) taking,

preparing for, or encouraging any other party to take any action reasonably construed as adverse

to the Lender or the Prepetition Lender.

3.       Adequate Protection Obligations.

(a)       Pursuant to sections 361, 363(e), and 364(c)(1) and (d)(1)(B) of the Bankruptcy

Code the Prepetition Lender is entitled to adequate protection of its interest in the Prepetition

Collateral, including the Cash Collateral (the "WF Adequate Protection Obligations").  For

purposes hereof, the "WF Adequate Protection Obligations" shall include an amount for and

equal to the amount of the aggregate diminution in the value of the Prepetition Lender's interests

in the Prepetition Collateral, including any such diminution resulting from (a) the use of Cash

Collateral (expressly including, among other things, the aggregate amount of the Cash Collateral

used by the Trustee from and after the Petition Date), (b) the sale, lease, or use by the Trustee (or

Page 14
Debtors:       The Russ Companies, Inc. *et al.*
Case No:       11-22471 (DHS)
Caption:       **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE  FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

other decline in value) of the Prepetition Collateral, and (c) the imposition of the automatic stay

under section 362 of the Bankruptcy Code.

(b)      Without acknowledging or admitting that Kid and Hanes have an interest in the

Prepetition Collateral, or that Kid's and Hanes's interests in the Prepetition Collateral are not

adequately protected to the extent required by the Bankruptcy Code, Kid and Hanes may be

entitled to adequate protection of their interests in the Prepetition Collateral, (the "Subordinated

Adequate Protection Obligations"), subordinate to the WF Adequate Protection Obligations.  For

purposes hereof, the "Subordinated Adequate Protection Obligations" shall be limited to the

adequate protection required under section 361(2) of the Bankruptcy Code or available under

section 507(b) of the Bankruptcy Code.  Nothing in this Order is intended or shall be interpreted

to ratify or otherwise validate Kid's and Hanes's subordinated prepetition interest in the

Prepetition Collateral or to limit the Trustee's ability to challenge such interests or Kid's and

Hanes's entitlement to adequate protection.

4.      Authorization of Trustee Loan Documents, Trustee Obligations and Postpetition

Financing.

(a)      The Trustee is hereby authorized on an interim basis to incur the Postpetition

Financing and to borrow monies from the Lender up to an aggregate principal amount of

$25,000,000 in accordance with the terms of this Order and the Trustee Loan Documents.  Such

funds shall only be used for purposes permitted or prescribed under the Trustee Loan

Page 15
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
              AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
              OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
              OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
              SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
              COLLATERAL**

---

Documents, the Budget and this Order. Wells Fargo agrees to make Postpetition Advances available to the Trustee subject to the terms and conditions of this Order and the Trustee Loan Documents and in accordance with the Budget.

(b)      As of each period end the outstanding principal balance under the Trustee Loan Documents shall not exceed:

| Period Ending | Maximum Loan Balance |
|---------------|----------------------|
| 5/6/11        | $14,000,000          |
| 5/20/11       | $12,750,000          |
| 6/3/11        | $8,100,000           |
| 6/17/11       | $6,600,000           |
| 7/1/11        | $4,700,000           |
| 7/15/11       | $4,400,000           |
| 7/29/11       | $150,000             |
| 8/12/11       | $100,000             |
| 8/26/11       | $0                   |

(c)      The Trustee is expressly authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents as may be reasonably required by the Trustee Loan Documents (including, without limitation, the execution or recordation of security agreements, control agreements, mortgages and financing statements).

(d)      The Trustee is authorized to execute and deliver amendments to the Trustee Loan Documents as may be agreed by the parties thereto. Any such amendment shall become effective five (5) days after copies of all such amendments are filed with the Court and served upon the counsel to the United States Trustee, Kid, Hanes and all persons who properly filed notices of appearances and requests for service pursuant to Bankruptcy Rule 2002.

Page 16
Debtors:        The Russ Companies, Inc. *et al.*
Case No:        11-22471 (DHS)
Caption:        **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE  FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

(e)     The terms of the Credit Agreement, as modified by this Order, and the terms of (i)

that certain Continuing Guaranty, dated December 23, 2008 (the "Snow Guaranty"), executed by

Richard D. Snow in favor of Wells Fargo relative to the obligations of the Debtors under the

Credit Agreement, (ii) that certain General Security Agreement, dated December 23, 2008 (the

"Amram's Agreement"), executed by Amram's Distributing Ltd. ("Amram's") in favor of Wells

Fargo relative to the obligations of the Debtors under the Credit Agreement, (iii) the Hanes

Subordination Agreement, and (iv) that certain, Subordination Agreement of Chengteh

Chinaware Co., dated as of December 23, 2008 (the  "Chengteh Subordination Agreement")are

each continuing, in full force and effect and enforceable in accordance with their terms.  Nothing

in this Order shall affect or modify the parties' rights and obligations under the Snow Guaranty,

the Amran's Agreement, Hanes Subordination Agreement, and/or the Chengteh Subordination

Agreement.

5.     Conditions to Lending.     The Lender's obligation to fund the Postpetition

Financing is conditioned upon approval of this Order, in form and substance acceptable to Wells

Fargo in its sole discretion.

6.     Superpriority Claims.

(a)     For all of the Trustee Obligations, the Lender is hereby granted, pursuant to

section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim

(collectively, the "Superpriority Claim"), which allowed superpriority claim shall be payable

Page 17
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

from and have recourse to all prepetition and postpetition property of the estates and the

proceeds thereof (but excluding avoidance actions under sections 542, 544, 545, 547, 548, 550,

551 or 553 of the Bankruptcy Code (the "Avoidance Actions") and any recoveries therefrom (the

"Avoidance Action Recoveries")), with priority over any and all administrative expenses, claims

for adequate protection, and all other claims against the Debtors, now existing or hereafter

arising (whether or not such expenses or claims may become secured by a judgment lien or other

non-consensual lien, levy or attachment), including, without limitation, all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (if any),

and over any and all administrative expenses or other claims arising under sections 105, 326,

328, 330, 331, 365, 502(b), 506(c), 507(a), 546, and 726 of the Bankruptcy Code and including

administrative expenses arising under or out of any superseding case under chapter 11 of the

Bankruptcy Code or any other proceeding related hereto or thereto, subject only to payment of

the Carve-Out (as defined herein).

(b)      The Prepetition Lender is hereby granted in each of the Debtors' Chapter 7 Cases

an allowed, superpriority administrative expense claim (the "Cash Collateral Superpriority

Claim") under section 507(b) of the Bankruptcy Code with respect to all WF Adequate

Protection Obligations. The Cash Collateral Superpriority Claim shall have priority over all

administrative expenses of the kind specified in, or ordered pursuant to, any provision of the

Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to,

Page 18
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE  FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), and 726 of the Bankruptcy

Code, or otherwise (whether incurred in any of the Chapter 7 Cases or any other proceeding

related hereto or thereto), which Cash Collateral Superpriority Claims shall be payable from and

have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof

(other than the Avoidance Actions and the Avoidance Action Recoveries).  The Cash Collateral

Superpriority Claim shall be subject and subordinate only to the Superpriority Claim and the

Carve-Out.

      7.    <u>Liens</u>.

      (a)    In accordance with section 364(d)(1) of the Bankruptcy Code, as security for the

Trustee Obligations, deemed effective and perfected as of the Petition Date and without the

necessity of the Trustee or the Lender incurring the expense for the execution, recordation of

filings of mortgages, security agreements, control agreements, pledge agreements, financing

statements or other similar documents, or possession or control of applicable assets, the Lender

shall be granted a valid, perfected, priming, first-priority senior security interest in and liens on

all of the Debtors' now owned and hereafter acquired, created or arising Collateral (as defined

below) subject to the payment of the Carve-Out (all such liens and security interests granted to

the Lender pursuant to this Order and the Trustee Loan Documents, the "<u>Liens</u>").  For purposes

hereof, "<u>Collateral</u>" is defined as all assets and property included in the Debtors' estates,

including without limitation, all present and future accounts, deposit accounts (including, without

Page 19
Debtors:       The Russ Companies, Inc. *et al.*
Case No:       11-22471 (DHS)
Caption:       **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

limitation, any deposit accounts opened by the Trustee, wherever located), chattel paper,

equipment, documents, general intangibles, held items, investment property, instruments,

inventory, items of payment, proceeds, products, Real Property, interests in Real Property,

records and all other Collateral as set forth in the Trustee Loan Documents (other than the

Avoidance Actions and the Avoidance Action Recoveries). Notwithstanding the foregoing, any

Liens with respect to the equity of foreign-owned subsidiaries shall be limited to 65% of the

ownership interest in such subsidiaries. The Liens shall extend and attach to all Collateral and

any proceeds of Collateral which is presently in existence or hereafter acquired (whether

acquired prior to or subsequent to the Petition Date) and which is owned by the Debtors or in

which Debtors have any interest, whether held by the Trustee or by others for any of the Debtors'

account, wherever located.

(b)     To secure the WF Adequate Protection Obligations, deemed effective and

perfected as of the Petition Date and without the necessity of the Trustee or the Prepetition

Lender incurring the expense for the execution, recordation of filings of mortgages, security

agreements, control agreements, pledge agreements, financing statements or other similar

documents, or possession or control of applicable assets, the Prepetition Lender shall be granted

a valid, perfected security interest in and replacement lien on all of the Collateral subject only to

the Liens and the Carve-Out (all such liens and security interests granted to the Prepetition

Lender pursuant to this Order, the "WF Adequate Protection Liens"). The WF Adequate

Page 20
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

Protection Liens shall extend and attach to all Collateral and any proceeds of Collateral which is

presently in existence or hereafter acquired (whether acquired prior to or subsequent to the

Petition Date) and which is owned by the Trustee, the Debtors or in which Debtors have any

interest, whether held by the Trustee or by others for any of the Debtors' account, wherever

located, to the same extent as the Liens.

(c)     Without acknowledging or admitting that Kid's or Hanes's interests in the

Prepetition Collateral are not adequately protected to the extent required by the Bankruptcy Code

and solely to the extent required by section 361(2) of the Bankruptcy Code, Kid and Hanes shall

be granted a security interest in and replacement lien on the Collateral subject to the Liens, the

WF Adequate Protection Lien and the Carve-Out (all such liens and security interests granted to

Kid and Hanes pursuant to this Order, the "Subordinated Adequate Protection Liens"). The grant

of the Subordinated Adequate Protection Liens in this paragraph is not intended and shall not be

interpreted to ratify or otherwise validate Kid's and Hane's subordinated prepetition interest in

the Prepetition Collateral or to limit the Trustee's ability to challenge such interests or Kid's or

Hanes's entitlement to adequate protection.

8.     Automatic Stay; Remedies.

(a)     Upon the occurrence of an Event of Default under the Trustee Loan

Documents and upon three (3) days' prior written notice to the Trustee, Kid and Hanes all stays

and injunctions in the Chapter 7 Cases, including, but not limited to, the automatic stay arising

Page 21
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE  FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

under section 362(a) of the Bankruptcy Code, will be terminated as to the Lender and the

Prepetition Lender, thereby permitting the Lender and the Prepetition Lender, as applicable, to

enforce their remedies against the Collateral, without further order of the Bankruptcy Court and

without the need for filing any motion for relief from the automatic stay or any other pleading in

order to, *inter alia,*

    (i)    Declare the Postpetition Financing to be terminated, whereupon the Postpetition Financing and all rights of the Trustee, on behalf of the Debtors to borrow under the Trustee Loan Documents, shall forthwith terminate;

    (ii)    Declare the Trustee Obligations to be forthwith due and payable, whereupon all Obligations shall become and be forthwith due and payable, without presentment, notice of dishonor, protest or further notice of any kind, all of which the Trustee hereby expressly waives;

    (iii)    Declare the Trustee's right to use Cash Collateral to be terminated, where upon the same shall forthwith terminate, and the Trustee will immediately turn over to Lender any funds held in any deposit accounts; provided that (i) with the written agreement of the Lender or (ii) pursuant to an order of the Bankruptcy Court upon emergency motion and upon no less than three (3) full business days' notice to Lender and the Prepetition Lender, the Trustee may use only that amount of Cash Collateral necessary to preserve and protect the Collateral for a period not to exceed five (5) days or such additional period of time as the Bankruptcy Court may order or  to which Lender agrees in its sole discretion; and

    (iv)    Charge the applicable default rate of interest on all Obligations.

    (b)    Notwithstanding anything herein to the contrary (other than as specified in

paragraph 8(a)(iii) above), and notwithstanding the applicability of section 362 of the

Page 22
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

Bankruptcy Code (to the extent necessary to exercise such remedies, relief from automatic stay

shall be deemed granted), upon written notice of breach to the Trustee, Kid and Hanes and the

Trustee's failure to cure any such breach within three (3) days after receipt of such notice, the

Lender and the Prepetition Lender shall (subject to all times to the authority of the Bankruptcy

Court to order otherwise within such three (3) day period) also be entitled to immediately

exercise any of the following rights and remedies without further order of the Bankruptcy Court

and without the need for filing any motion for relief from the automatic stay or any other

pleading in order that:

> (i)     The Lender may apply any and all money owing by the Lender to
> the Trustee to the payment of the Obligations, in the Lender's sole
> discretion;

> (ii)    The Lender may exercise and enforce any and all rights and
> remedies available upon default to a secured party under the UCC,
> including the right to take possession of Collateral, or any evidence
> thereof, proceeding without judicial process or by judicial process,
> and the right to sell, lease or otherwise dispose of any or all of the
> Collateral (with or without giving any warranties as to the
> Collateral, title to the Collateral or similar warranties), and, in
> connection therewith, the Trustee will (i) immediately turn over to
> Lender any funds held in any deposit accounts opened or utilized
> by the Trustee and (ii) on demand and no later than one (1)
> business day after such demand, assemble the Collateral (other
> than the deposit accounts) and make it available to the Lender at a
> place to be designated by the Lender;

> (iii)   The Lender may exercise and enforce its rights and remedies under
> the Trustee Loan Documents;

Page 23
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

(iv)    The Lender may without regard to any waste, adequacy of the security or solvency of the Loan Parties, apply for the appointment of a receiver of the Collateral, to which appointment the Trustee hereby consents, whether or not foreclosure proceedings have been commenced under the Trustee Loan Documents and whether or not a foreclosure sale has occurred;

(v)    The Lender may exercise any other rights and remedies available to it by law or agreement; and/or

(vi)    If the Lender sells any of the Collateral on credit, the Obligations will be reduced only to the extent of payments actually received. If the purchaser fails to pay for the Collateral, the Lender may resell the Collateral and shall apply the proceeds actually received to the Obligations.

(c)    The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit or effectuate the terms of this Order and the documents evidencing the Trustee Obligations, including, without limitation, to permit the execution and recordation of documents in the Lender's and Prepetition Lender's, as applicable, discretion to evidence the creation and perfection of the Lender's and Prepetition Lender's liens on the Collateral.

9.    <u>Use of Proceeds; Bank Accounts</u>.

(a)    The Trustee shall use the proceeds of the Postpetition Financing obtained under the Trustee Loan Documents solely in accordance with and subject to the conditions set forth in this Order, the Trustee Loan Documents and the Budget. Nothing in this Order shall be construed to require the Lender to make advances or extensions of credit or other financial

Page 24
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

accommodations to permit the Trustee to make any payments, except to the extent expressly

provided for in this Order and the Trustee Loan Documents.

(b)      Any proceeds of the sale, lease, or other disposition of the Collateral shall be used

in accordance with the provisions of this Order and the Trustee Loan Documents. To the extent

such proceeds are applied to reduce the Trustee Obligations, they shall be applied in payment of

the obligations under, and in the manner provided in, the Trustee Loan Documents, and the

Trustee is deemed to have irrevocably waived any right to direct the manner of application of

any payments to the Lender or any other receipts by the Lender of proceeds of any of the

Collateral, including all of the Lender's cash collateral, other than as expressly set forth in this

Order and the Trustee Loan Documents.

(c)      Any proceeds of the sale, lease, or other disposition of the Prepetition Collateral

shall be applied first to payment of the Prepetition Obligations until paid in full, and then to the

outstanding balance of the Trustee Obligations. Any proceeds of the sale, lease, or other

disposition of the Collateral shall be applied first to payment of the Trustee Obligations until

paid in full, and then to the outstanding balance of the Prepetition Obligations.

10.      <u>Perfection of Liens and Replacement Liens.</u>

(a)      This Order shall be sufficient and conclusive evidence of the validity, perfection,

and priority of the Liens, and the WF Adequate Protection Liens and the Subordinated Adequate

Protection Liens, without the necessity of filing or recording any financing statement, leasehold

Page 25
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

mortgage, or other instrument or document which may otherwise be required under the law of
any jurisdiction or the taking of any other action to validate or perfect such liens or security
interests in the Collateral or to entitle the Lender and the Prepetition Lender to the priorities
granted herein. The automatic stay imposed by section 362 hereby is modified to permit, but not
require, the Lender and the Prepetition Lender to file or record financing statements, trademark
filings, copyright filings, mortgages, leasehold mortgages, notices of lien or similar instruments
in any jurisdiction, or take possession or control of collateral, or take any other action in order to
validate and perfect the liens and security interests granted to it hereunder. Whether or not the
Lender or the Prepetition Lender shall, each in its sole discretion, choose to file such financing
statements, trademark filings, copyright filings, mortgages, leasehold mortgages, notices of lien
or similar instruments, or take possession or control of collateral, or otherwise confirm perfection
of the liens and security interests granted to it hereunder, such liens and security interests shall be
deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge,
dispute or subordination, at the time and on the date of entry of this Order. Upon the request of
the Lender, the Prepetition Lender, Kid or Hanes, the Trustee, without any further consent of any
party or further order of this Bankruptcy Court, is authorized to take, execute and deliver such
instruments and agreements (including, without limitation, delivery of control agreements and
possessory collateral) to enable the Lender and the Prepetition Lender, Kid or Hanes, as

Page 26
Debtors:        The Russ Companies, Inc. *et al.*
Case No:        11-22471 (DHS)
Caption:        **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

applicable, to further validate, perfect, preserve, and enforce the Liens, WF Adequate Protection

Liens and the Subordinated Adequate Protection Liens, as applicable.

(b)     A certified copy of this Order may, in the discretion of the Lender or the

Prepetition Lender, be filed with or recorded in filing or recording offices in addition to or in lieu

of any financing statements, mortgages, leasehold mortgages, notices of lien or similar

instruments, and all filing offices are hereby authorized and directed to accept such certified

copy of this Order for filing and recording.

(c)     Upon a Termination Event as provided in paragraph 13 hereof, a certified copy of

this Order may, in the discretion of the Lender or the Prepetition Lender, be presented to any

bank or other party having possession or control over the Collateral, including, without

limitation, any deposit accounts, and such bank or other party is hereby authorized and directed

to turn over such Collateral to the Lender or the Prepetition Lender, as applicable.

11.     <u>Preservation of Rights Granted Under This Order.</u>

(a)     Other than the Carve-Out, and with respect to the Liens, the WF Adequate

Protection Liens, and the Subordinated Adequate Protection Liens, no claim or lien having a

priority superior to or *pari passu* with those granted by this Order to the Lender or the

Prepetition Lender, Kid or Hanes shall be granted or allowed while any portion of the Trustee

Obligations remains outstanding, and the Liens and the WF Adequate Protection Liens and the

Subordinated Adequate Protection Liens shall not be subordinated to or made *pari passu* with

Page 27
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or

otherwise, while any portion of the Trustee Obligations remains outstanding. The protections

granted to Kid and Hanes in this paragraph shall terminate, without further action, when the

Trustee Obligations are satisfied in full.

(b)      Unless all of the Trustee Obligations shall have been indefeasibly paid in full, the

Trustee shall not, and shall not seek to, (i) in any way prime or otherwise adversely affect the

liens granted under this Order by offering a subsequent lender or a party in interest a superior or

*pari passu* lien or claim pursuant to section 364(c)(1), 364(d), or 507(b) of the Bankruptcy Code

or otherwise, (ii) in any way grant junior encumbrances on any Collateral, or (iii) otherwise

encumber otherwise unencumbered assets or estate property.

(c)      Unless all of the Trustee Obligations shall have been indefeasibly paid in full, the

Trustee shall not seek, and it shall constitute an Event of Default if the Trustee seeks, or if there

are entered, any modifications or extensions of this Order without the prior written consent of the

Lender and the Prepetition Lender, and no such consent shall be implied by any other action,

inaction or acquiescence by the Lender and the Prepetition Lender.

(d)      If any or all of the provisions of this Order are hereafter reversed, modified,

vacated, or stayed, such reversal, stay, modification, or vacation shall not affect (i) the validity of

any of the Trustee Obligations, WF Adequate Protection Obligations or Subordinated Adequate

Protection Obligations incurred prior to the actual receipt of written notice of the effective date

Page 28

Debtors:      The Russ Companies, Inc. *et al.*

Case No:      11-22471 (DHS)

Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

of such reversal, stay, modification, or vacation or (ii) the validity or enforceability of any lien or

priority authorized or created hereby with respect to any of the Trustee Obligations, the WF

Adequate Protection Obligations or Subordinated Adequate Protection Obligations.

Notwithstanding any such reversal, stay, modification or vacation, any use of the Postpetition

Financing, the WF Adequate Protection Obligations, Trustee Obligations or Subordinated

Adequate Protection Obligations by the Trustee prior to the actual receipt of written notice of the

effective date of such reversal, stay, modification, or vacation shall be governed in all respects by

the original provisions of this Order, and the Lender and the Prepetition Lender shall be entitled

to all the rights, remedies, privileges, and benefits granted by section 364(e) of the Bankruptcy

Code, this Order, and the Trustee Loan Documents with respect to all Trustee Obligations and

WF Adequate Protection Obligations, as applicable.

(e)      Except as expressly provided in this Order or in the Trustee Loan Documents or

as agreed in writing by the Lender or the Prepetition Lender, the Liens, the Subordinated

Adequate Protection Liens, the WF Adequate Protection Liens, the Superpriority Claim, the

Cash Collateral Superpriority Claim, and all other rights and remedies of the Lender, the

Prepetition Lender, Kid and Hanes granted by the provisions of this Order and the Trustee Loan

Documents shall survive, and shall not be modified, impaired, or discharged by the dismissal or

conversion of any of the Chapter 7 Cases.  The terms and provisions of this Order and the

Trustee Loan Documents shall continue in the Chapter 7 Cases, in any successor cases if any of

Page 29
Debtors:        The Russ Companies, Inc. *et al.*
Case No:        11-22471 (DHS)
Caption:        **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS, AND (II) PERMITTING THE USE OF CASH COLLATERAL**

---

the Chapter 7 Cases cease to be jointly administered, or in any superseding case under the Bankruptcy Code, and the Liens, the Subordinated Adequate Protection Liens, the WF Adequate Protection Liens, the Superpriority Claim, Cash Collateral Superpriority Claim, and all other rights and remedies of the Lender, the Prepetition Lender, Hanes and Kid granted by the provisions of this Order and the Trustee Loan Documents shall continue in full force and effect until the Obligations are indefeasibly paid in full.

12.    <u>Limitation on Use of Financing Proceeds and Collateral</u>.    Notwithstanding anything herein or in any other order of the Bankruptcy Court to the contrary, no borrowings under the Trustee Loan Documents, and none of the Collateral (including cash and cash equivalents and cash collateral) or the Carve-Out, may be used to (i) object, contest, or raise any defense to, the validity, perfection, priority, extent, or enforceability of any amount due under the Trustee Loan Documents, the liens or claims granted under this Order or the Trustee Loan Documents, the Prepetition Liens or the claims or obligations granted under the Prepetition Obligations and related guarantees, (ii) assert any claims, counterclaims, defenses, causes of action, objections, or contests (including, without limitation, any claims or causes of action arising under chapter 5 of the Bankruptcy Code) against the Lender, the Prepetition Lender or any of their respective agents, affiliates, representatives, attorneys or advisors, or (iii) seek to modify or otherwise impair any of the rights granted to the Lender or the Prepetition Lender hereunder or under the Trustee Loan Documents.

Page 30
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS, AND (II) PERMITTING THE USE OF CASH COLLATERAL**

---

13.    <u>Termination.</u>    The ability of the Trustee to use the Cash Collateral and the agreement by the Lender to make the Postpetition Financing available to the Trustee under the Trustee Loan Documents pursuant to the terms of this Order shall continue until (i) June 7, 2011, which date may be extended solely at the option of the Lender in writing, without the need for any further Court approval or as otherwise set forth in the Trustee Loan Documents, (ii) the date of the acceleration of any outstanding extensions of credit under the Trustee Loan Documents, or (iii) the occurrence of an Event of Default under the Trustee Loan Documents (such earliest date, the "<u>Termination Date</u>").    As used herein, an "<u>Event of Default</u>" under the Trustee Loan Documents shall occur upon the occurrence of, *inter alia*, any of the following events, with no cure period, without the prior written consent of Lender:

    (a)    Default in the payment of any amount owed by the Loan Parties to Lender as such Indebtedness becomes due and payable pursuant to the terms of the Postpetition Financing;

    (b)    The failure to comply with or default in the performance of any term, covenant or agreement contained in or contemplated by the Trustee Loan Documents, including, without limitation, the Budget, the Financing Orders, or any documents executed in connection with any of the foregoing;

    (c)    Except as otherwise permitted or agreed to in writing by the Lender, any ownership interest in estate assets shall be sold or transferred in any transaction other than a Sale Transaction, or shall become subject to a Lien;

    (d)    The filing by any of the Loan Parties of any motion or proceeding that could reasonably be expected to result in impairment of the

Page 31
Debtors:      The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE  FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

Lender's rights hereunder, including any motion to surcharge the
Lender or the Collateral under 11 U.S.C. § 506(c) or otherwise;

(e)     The filing of a motion by any of the Loan Parties for entry of an
order staying or otherwise prohibiting the prosecution of any
enforcement action or, except as provided herein, any motion or
pleading seeking to challenge or invalidate the Lender's or the
Prepetition Lender's Liens or otherwise commencing any cause of
action against the Lender or the Prepetition Lender;

(f)     The rendering against any Debtor or the Trustee of an arbitration
award, a final judgment, decree, or order for the payment of money
in excess of $25,000 or a postpetition lien on any of the Collateral
and the continuance of such arbitration award, judgment, decree, or
order unsatisfied and in effect for any period of ten (10)
consecutive days without a stay of execution;

(g)     Trustee's failure to (i) pay postpetition obligations when due, after
giving effect to any applicable grace period, (ii) be insured by a
United States Trustee's bond in an amount satisfactory to Lender in
its sole discretion, (iii) comply with the variances set forth in
Exhibit 2 hereto, and (iv) adhere to the following milestones: (x)
hold an auction for the Debtors' assets on or before May 27, 2011
or (y) on or before June 7, 2011, obtain approval from the Lender
of a liquidation plan for the Debtors' inventory, which approval
may be granted in Wells Fargo's sole discretion;

(h)     A Change of Control occurs with respect to any Loan Party other
than Amram's;

(i)     Any Guarantor shall repudiate, purport to revoke, or fail to perform
any obligation under such Guaranty in favor of the Lender or any
Guarantor shall cease to exist;

(j)     The Lender believes in good faith that there has occurred any
material adverse change in the business or financial condition of a
Loan Party since the Petition Date;

Page 32
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

(k)     Any impairment of the Collateral or the termination of any state or
federal license or authorization or contract;

(l)     The Trustee (except following the Lender's prior written request or
with the Lender's express prior written consent, which consent
shall not be implied from any other action, inaction, or
acquiescence of the Lender) shall file a motion with the
Bankruptcy Court or any other court with jurisdiction in the matter
seeking an order, or an order is otherwise entered, modifying,
reversing, revoking, staying, rescinding, vacating, or amending the
Financing Orders or any of the Loan Documents;

(m)     The Trustee shall file any motion or application, or the Bankruptcy
Court grants the motion or application of any other Person, which
seeks approval for or allowance of any claim, lien, security interest
ranking equal or senior in priority to the claims, liens and security
interests granted to the Prepetition Lender or the Lender under the
Financing Orders or the Trustee Loan Documents or any such
equal or prior claim, lien, or security interest shall be established in
any manner, except, in any case, as expressly permitted under the
Financing Orders or the Permitted Liens;

(n)     The Bankruptcy Court shall not have entered the Financing Orders
or the Financing Orders shall cease to be in full force and effect
after the date of entry thereof (whether due to modification,
reversal, revocation, remand, stay, rescission, vacation,
amendment, or otherwise) without the prior written consent of
Lender (and no such consent shall be implied from any other
authorization or acquiescence by Lender);

(o)     The entry of an order (i) revoking or terminating the Trustee's
authority to operate the Debtors' business under section 721 of the
Bankruptcy Code, (ii) dismissing a Chapter 7 Case either
voluntarily or involuntarily or (iii) converting a Chapter 7 Case to
a case under chapter 11 of the Bankruptcy Code;

(p)     The entry of an order (i) providing relief from the automatic stay
otherwise imposed pursuant to section 362 of the Bankruptcy Code
with respect to any material contract, lease, or obligation or against

Page 33
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS, AND (II) PERMITTING THE USE OF CASH COLLATERAL**

---

any critical vendor; (ii) allowing a third party to proceed against any material assets or contracts; (iii) staying or otherwise prohibiting the prosecution of any enforcement action by the Lender or the Prepetition Lender; or (iv) otherwise adversely affecting the Lender's or Prepetition Lender's liens, claims, or rights and remedies;

(q)     If, other than as set forth in the Financing Orders, (i) any creditor receives any adequate protection payment which is not fully acceptable to the Lender in its sole discretion or (ii) any lien other than the Subordinated Adequate Protection Liens is granted as adequate protection; or

(r)     The Trustee resigns or is removed as trustee of the Chapter 7 Cases or The Clear Thinking Group if retained, is terminated or is otherwise no longer employed by the Trustee less than four weeks following the Petition Date, unless Wells Fargo otherwise agrees in writing.

14.     <u>Carve-Out</u>.

(a)     For purposes hereof, the "<u>Carve Out</u>" shall include (i) the fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) fees and expenses of the Trustee's professionals in the aggregate amount of $600,000, which amount shall be deposited into a segregated account in 3 consecutive monthly payments of $200,000 commencing May 25, 2011 and allocated among the Trustee's professionals, provided that such fees and expenses are subject to Bankruptcy Court approval, less any amounts previously paid in accordance with the Budget, and (iii) an amount equal to the estimated "Ch. 7 Trustee" line item set forth on the Budget to be funded on a weekly basis and deposited into a separate account, which amount is to be calculated in accordance with section

Page 34
Debtors:       The Russ Companies, Inc. *et al.*
Case No:       11-22471 (DHS)
Caption:       **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

326 of the Bankruptcy Code, is subject to Bankruptcy Court approval, and is less any amounts

previously paid in accordance with the Budget.

15.   No Marshalling. In no event shall the Lender or the Prepetition Lender be subject

to the equitable doctrine of marshalling or any similar doctrine, as the case may be, with respect

to the Trustee Obligations or any of the property comprising the Collateral.

16.   Limits on the Lender's or Prepetition Lender's Liability. Nothing in this Order or

in any of the Trustee Loan Documents or any other documents related to the financing

transactions authorized hereby or the Prepetition Obligations shall in any way be construed or

interpreted to impose or allow the imposition upon the Lender or the Prepetition Lender of any

liability for any claims arising from the prepetition activities by the Debtors or the postpetition

activities of the Trustee in the operation of the Debtors' business, or in connection with the

Trustee's liquidation efforts. Neither the Lender nor the Prepetition Lender shall, in any way or

manner, be liable or responsible for (a) the safekeeping of the Collateral, (b) any loss or damage

thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the

value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding

agency, or other person, and all risk of loss, damage, or destruction of the Collateral shall be

borne by the Trustee.

17.   Lenders' Right to Credit Bid. The Lender and the Prepetition Lender shall have

the right to credit bid with respect to any sale of assets or equity under section 363 of the

Page 35
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

Bankruptcy Code, the aggregate amount, (i) with respect to the Lender, advanced under the

Postpetition Financing, and (ii) with respect to the Prepetition Lender, outstanding under the

Prepetition Obligations, which credit bid rights under section 363(k) of the Bankruptcy Code or

otherwise shall not be impaired in any manner. For the avoidance of ambiguity, (i) the

Prepetition Lender or the Lender may credit bid up to the total amount of the prepetition and

postpetition Indebtedness and (ii) no future order or plan may impair the credit bid rights of the

Lender or the Prepetition Lender.

18.    No Waiver by Lenders. Notwithstanding anything to the contrary herein, the

entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly, or otherwise impair any of the rights of Kid, Hanes, the Lender or the Prepetition

Lender, as applicable, under the Bankruptcy Code or under non-bankruptcy law, including,

without limitation, the right of such lenders to take any action whatsoever in the Chapter 7 Cases,

including, without limitation, to request further modification of the automatic stay pursuant to

section 362 of the Bankruptcy Code.

19.    Challenge. In accordance with Section II(A)(1) and (2) of the Court's General

Order Adopting Guidelines for Financing Requests, in the event of a successful challenge to the

validity, enforceability, extent, perfection, or priority of the Prepetition Liens, the Bankruptcy

Court retains the right to unwind or invalidate the relevant protections afforded to the Prepetition

Lenders hereunder; provided, however, any such provision of this Order which is invalidated

Page 36
Debtors:    The Russ Companies, Inc. *et al.*
Case No:    11-22471 (DHS)
Caption:    **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

shall not, as applicable, affect or invalidate the remaining provisions hereof, which shall

continue, to the extent applicable, in full force and effect. Notwithstanding anything herein to

the contrary, the Trustee shall have until the forty-fifth (45th) day after the Petition Date (the

"Challenge Period") to investigate the nature, extent, validity, priority or perfection of the

Prepetition Liens. If the Trustee timely files a complaint on or before the expiration of the

Challenge Period, all other claims and actions against the Prepetition Lender not expressly

asserted in such complaint shall be deemed, immediately and without further notice, motion or

application to, order of, or hearing before, this Court, to have been forever relinquished,

discharged, released and waived.

20.     Release. In consideration for the Postpetition Financing, the Trustee, for itself

and on behalf of the Debtors, the Debtors, and each of their successors and assigns (collectively,

the "Releasors"), shall, subject to paragraph 19 hereof, forever release, discharge and acquit the

Lender, the Prepetition Lender, and each of their respective officers, directors, employees,

agents, attorneys, and predecessors in interest (collectively, the "Releasees") of and from any and

all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of

action, indebtedness, and obligations, of every type, including, without limitation, any so-called

"lender liability" claims or defenses, which arose on or prior to the date this Order is entered with

respect to the Debtors and/or the Postpetition Financing; provided, however, the foregoing

Page 37
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

release shall not release the Lender or the Prepetition Lender from its obligations under this

Order.

21.    <u>Allowed Secured Claims</u>.  Subject in all respects to paragraph 19, without the

requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Obligations

(including, to the extent applicable, all accrued interest, expenses, fees, or any other amount

permitted under the Prepetition Loans) shall constitute allowed secured claims for all purposes in

the Chapter 7 Cases and any subsequent cases or proceedings under the Bankruptcy Code (each,

a "<u>Successor Case</u>"), (ii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable,

perfected liens not subject to recharacterization, subordination (except as expressly specified in

this Order as to the Carve-Out, the Liens, and the WF Adequate Protection Liens) or avoidance

for all purposes in the Chapter 7 Cases and any Successor Case, and (iii) the Prepetition

Obligations, the Prepetition Liens, and prior payments on account of or with respect to the

Prepetition Obligations shall not be subject to any other or further claims, cause of action,

recharacterization, objection, contest, setoff, defense, or challenge by the Trustee or any party in

interest for any reason.

22.    <u>Section 506(c) Waiver</u>.  Except for the Carve-Out and as provided in the Budget,

no costs or expenses of administration which have been or may be incurred in the Chapter 7

Cases or any future proceedings or cases related hereto, at any time, shall be charged against the

Lender or the Prepetition Lender, their claims, or the Prepetition Collateral or the Collateral,

Page 38
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

___

pursuant to sections 105, 506(c) or 522 of the Bankruptcy Code or otherwise, without the prior

written consent of the Lender or the Prepetition Lender, as applicable, and no such consent shall

be implied from any other action, inaction, or acquiescence by the Lender or the Prepetition

Lender. The waiver(s) set forth in this paragraph shall not be deemed or construed to run in

favor of Kid or Hanes, or Kid's or Hanes's interests, if any, in the Prepetiion Collateral or the

Collateral.

23.    Retention of Financial Advisor. The Lender may immediately hire and retain a

financial advisor of its choosing to monitor and/or assist with the liquidation of the Debtors'

estates and the Trustee's compliance with the Budget. The Trustee shall fully cooperate with

such financial advisor and its requests and shall provide complete transparency regarding all

financial and operational issues. The Trustee shall pay the fees and expenses of such financial

advisor upon presentment of an invoice, up to $25,000 per month. In the event the fees and

expenses of such financial advisor are less than $25,000 in any given month(s), the difference

between $25,000 and the fees and expenses incurred for such month(s) may be applied to any

other month(s) in which such financial advisor's fees and expenses exceed $25,000. Any

amounts paid to the Lender's financial advisor shall not be included in the Carve-Out and shall

not be included in the calculation of professional fees under the Budget.

24.    Successors and Assigns. The Trustee Loan Documents and the provisions of this

Order shall be binding upon the Lender, the Prepetition Lender, the Trustee, and the Debtors, and

Page 39
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

each of their respective successors and assigns, and shall inure to the benefit of the Lender (and

its successors and assigns) and the Trustee; provided, however, that the Lender shall have no

obligation to extend any financing to any successor or assign of the Trustee.

25.     Subsequent Liens. If the Court grants liens or security interests to others pursuant

to section 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code, which

shall be subordinate to the liens or security interests of the Lender and the Prepetition Lender in

the Collateral (collectively, the "Subsequent Liens"), any proceeds of the loans or extensions of

credit secured by Subsequent Liens shall be applied first to payment of the Trustee Obligations,

next to the payment of the WF Adequate Protection Obligations. To the extent that the proceeds

of any such loans or extensions exceed the amounts required to pay the Trustee Obligations and

the WF Adequate Protection Obligations, Kid and Hanes shall be authorized to file a motion with

the Court, on notice to the Trustee, seeking payment of such excess proceeds on account of the

Subordinated Adequate Protection Obligations, if any, and the Trustee reserves all rights to

object thereto on any grounds.

26.     Binding Nature of Findings. The findings contained in this Order shall be binding

upon all parties in interest.

27.     Immediate Effectiveness. Notwithstanding Bankruptcy Rules 6004(h), 6006(d),

7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil

Page 40
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
              AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
              OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
              OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
              SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
              COLLATERAL**

---

Procedure, this Order shall be immediately effective and enforceable upon its entry and there

shall be no stay of execution or effectiveness of this Order.

28.    Conflicts. In the event of any conflict between or among the express terms or

provisions of any of the Trustee Loan Documents and the terms and provisions of this Order, the

terms and provisions of this Order shall govern.

29.    No Proof of Claim or Request for Allowance of Administrative Expense. For the

avoidance of doubt, the Lender and the Prepetition Lender are hereby relieved of any

requirement to file a proof of claim or request allowance of the Superpriority Claim or Cash

Collateral Superpriority Claim in the Chapter 7 Cases or any other proceeding with respect to

any Prepetition Obligations, Trustee Obligations, or WF Adequate Protection Obligations, as

applicable.

30.    Rights of Recoupment or Setoff. Notwithstanding anything to the contrary in this

Order, nothing in this Order shall (a) compromise, modify or affect the ability of any party in

interest to assert a right of recoupment or setoff with respect to amounts allegedly owed to the

Debtors, or (b) create any right of recoupment or setoff with respect to amounts allegedly owed

to the Debtors (except to the extent expressly provided for in the Trustee Loan Documents).

31.    Section 552(b). The Prepetition Lender, Hanes and Kid shall be entitled to all of

the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case"

exception under section 552(b) of the Bankruptcy Code shall not apply to Prepetition Lender,

Page 41
Debtors:     The Russ Companies, Inc. *et al.*
Case No:     11-22471 (DHS)
Caption:     **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

Hanes or Kid with respect to the proceeds, product, offspring, or profits of the Prepetition

Collateral.

32.     Section 507(b) Reservation.     Nothing herein shall impair or modify the

application of section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Prepetition Lender, Kid or Hanes hereunder is insufficient to compensate for any

diminution in value of their respective interests in the Prepetition Collateral during the Chapter 7

Cases or any Successor Case. Nothing contained herein shall be deemed a finding by the Court,

or an acknowledgement by the Prepetition Lender, Kid or Hanes that the adequate protection

granted herein does in fact adequately protect the Prepetition Lender, Kid or Hanes against any

diminution in value of its interests in the Prepetition Collateral (including Cash Collateral). To

the extent that Kid or Hanes are granted adequate protection in accordance with section 507(b) of

the Bankruptcy Code, that adequate protection shall be subject to the Superpriority Claim, the

Cash Collateral Superpriority Claim and the Carve-Out, and shall not attach to, or otherwise be

payable from, the Avoidance Actions or the Avoidance Recoveries.

33.     No Third Party Beneficiaries.     Nothing in this Order shall create any right for the

direct or indirect benefit of any person other than the Prepetition Lender, Hanes or Kid or the

parties to the Trustee Loan Documents.

34.     Retention of Jurisdiction.     The Bankruptcy Court shall retain jurisdiction to hear

and determine all matters arising from this Order and its implementation.

Page 42
Debtors:      The Russ Companies, Inc. *et al.*
Case No:      11-22471 (DHS)
Caption:      **FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 721, AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) AUTHORIZING TRUSTEE TO
OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY AND
SECURED BASIS, AND (II) PERMITTING THE USE OF CASH
COLLATERAL**

---

35.    <u>Authority</u>.  The Trustee is authorized and directed to perform all acts, and execute
and comply with the terms of such other documents, instruments, and agreements the Lender
may require, as evidence of and for the protection of the Postpetition Financing, or which
otherwise may be deemed necessary by the Lender to effectuate the terms and conditions of this
Order and the Trustee Loan Documents.

36.    <u>Severability</u>.  In the event of a timely and successful challenge to the validity,
enforceability, extent, perfection, or priority of the Prepetition Liens, the Bankruptcy Court
retains the right to unwind or invalidate the relevant protections afforded to the Prepetition
Lender hereunder; *provided, however*, any such provision of this Order which is invalidated shall
not affect or invalidate the remaining provisions hereof, which shall continue in full force and
effect.

37.    The Trustee will provide to Kid the weekly reports required in Schedule 1,
paragraph 3(e).

## SCHEDULE 1

1.    Ratification of Credit Agreement and Related Documents.

Based upon the information provided to the Trustee and subject to the Challenge Period, the Trustee hereby ratifies and confirms:

(a)    all the terms and conditions of the Credit Agreement (as modified and amended by this Order) and each of the other Loan Documents (as defined in the Credit Agreement); and the Trustee acknowledges and agrees that the Credit Agreement (as modified and amended by this Order) and each other Loan Document shall be deemed to be in full force and effect with respect to the Postpetition Financing; and

(b)    that (i) any and all Prepetition Collateral shall secure the Postpetition Financing (the "Postpetition Collateral"); provided, however, that (x) any proceeds of the sale, lease or other disposition of the Prepetition Collateral shall be applied first to payment of the prepetition Indebtedness under the Credit Agreement, until paid in full, and then to the Postpetition Financing, and (y) any proceeds of the sale, lease or other disposition of the Postpetition Collateral shall be applied first to payment of the postpetition Indebtedness under this Agreement, until paid in full, and then to the payment of the prepetition Indebtedness under the Credit Agreement, and (ii) any and all deeds of trust, mortgages, UCC-1 financing statements or other documents or instruments evidencing or securing or perfecting any lien or collateral interest granted by any Debtor to the Prepetition Lender shall be deemed to secure the Postpetition Financing, and (iii) the liens upon the Collateral (as defined in the Credit Agreement) in favor of the Prepetition Lender constitute valid, perfected, first priority liens as described in this Order, in each case without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the liens of the Prepetition Lender in and to the Collateral (as defined in the Credit Agreement); provided, however, Wells Fargo may file or record financing statements or other instruments to evidence and to perfect such liens and, provided further, however, that no such filing or recordation shall be necessary or required in order to create or perfect any such lien or deemed to violate the automatic stay.

(c)    Without limiting the generality of the Trustee's ratification and confirmation provided for in subparagraphs (a) and (b) above, the Trustee hereby ratifies and confirms, subject to the entry and effectiveness of this Order (i) the Security Documents (as defined in the Credit Agreement), and (ii) that the Security Documents shall be deemed to be in full force and effect with respect to the Postpetition Financing until all of the Debtors' liabilities and obligations to Wells Fargo under the Credit Agreement have been indefeasibly paid in full in cash and all commitments of Wells Fargo to lend thereunder have been terminated.

2.    Post-Petition Financing.    Subject to the terms of this Order and any Final Order issued by the Bankruptcy Court (collectively, the "Financing Orders"), the Trustee is authorized to incur postpetition financing from Wells Fargo in the form of post-petition Advances (as defined in the Credit Agreement) under the Credit Agreement in a maximum aggregate principal amount of up to $25,000,000 (the "Maximum Line Amount") (all such post-petition Advances,

together with all other postpetition Indebtedness owing to Wells Fargo under the Trustee Loan Documents, the "Postpetition Indebtedness").

Post-petition Advances shall be made available by Wells Fargo to the Trustee subject to the terms and conditions of the Financing Orders and the Trustee Loan Documents and in accordance with the Budget. In no event shall the aggregate principal balance of the Postpetition Indebtedness exceed at any time the lesser of (i) the Maximum Line Amount, or (ii) the applicable amount set forth in the Budget for such time.

Notwithstanding anything to the contrary set forth in the Credit Agreement, with respect to the Postpetition Financing (w) no Letters of Credit shall be available to the Debtors or the Trustee without the express written consent of Wells Fargo, (x) the Borrowing Base (and all reporting obligations relative thereto) is deemed eliminated from the Credit Agreement, (y) all Advances under the Postpetition Financing Documents shall be Floating Rate Advances bearing interest at a rate per annum equal to the Prime Rate plus 2.25%, and no LIBOR Advances shall be made under the Postpetition Financing Documents (and any outstanding LIBOR Advances shall automatically convert to Floating Rate Advances at the expiration of the applicable Interest Period), and (z) all receipts and collections on account of Collateral shall be applied as set forth in paragraph 9(c) of the Interim Order. From and after the entry of the Interim Order, all references to the "Companies" in the Credit Agreement and the other Loan Documents shall mean and refer to the Debtors, as debtors in these cases, and the Debtors are deemed to be the same entities which existed prior to the filing of the Debtors' respective bankruptcy petitions.

3.    Amendments to Pre-Petition Credit Agreement.    The terms and provisions of the Credit Agreement and the other Loan Documents are deemed to be and remain in full force and effect with respect to the prepetition Indebtedness and the Postpetition Financing, subject to the provisions of the Financing Orders and subject to the following amendments to the terms of the Credit Agreement:

(a)    Subsection 1.1(c) of the Credit Agreement is deemed amended by deleting such subsection in its entirety and substituting therefor the following:

"(c)    Use of Line of Credit Proceeds. The Companies shall use the proceeds of Advances for the purpose of funding post-petition operations in accordance with the Budget."

(b)    Subsection 1.2 of the Credit Agreement is deemed amended by deleting such subsection in its entirety and substituting therefor "Intentionally Deleted".

(c)    Section 1 of the Credit Agreement is deemed further amended by adding thereto the following new subsections 1.10 and 1.11:

"1.10    **Single Loan.** All Advances to the Companies and all of the other Indebtedness of the Companies arising under this Agreement and the other Loan Documents shall constitute one general obligation of the Companies secured by all of the Collateral.

1.11    **Grants, Rights and Remedies**. The Liens, security interests and the
administrative priority granted pursuant to Section 2 may be independently
granted by the Loan Documents and by other Loan Documents hereafter entered
into. This Agreement, the Interim Financing Order, the Final Financing Order
and such other Loan Documents supplement each other, and the grants, priorities,
rights and remedies of Wells Fargo hereunder and thereunder are cumulative."

(d)    <u>Section 2</u> of the Credit Agreement is deemed amended [as follows:

(i)    By deleting <u>subsection 2.1</u> thereof in its entirety and substituting therefor
the following:

"**2.1    Grant of Security Interest**. Each Company hereby pledges, assigns and
grants to Wells Fargo, for the benefit of Wells Fargo and as agent for
Wells Fargo Merchant Services, L.L.C., a continuing first priority Lien
and security interest, in accordance with sections 364(c)(2) and (3) of the
Bankruptcy Code (collectively referred to as the "<u>Security Interest</u>") in the
Collateral, as security for the payment and performance of all
Indebtedness and all Pre-Petition Indebtedness, which Lien and Security
Interest shall be subject only to (i) payment of the Carveout, and (ii)
Permitted Liens. Following request by Wells Fargo, each Company shall
grant Wells Fargo, for the benefit of Wells Fargo and Wells Fargo
Merchant Services, L.L.C., a Lien and security interest in all commercial
tort claims that it may have against any Person, <u>provided</u>, <u>however</u>, that
such claims do not include causes of action under chapter 5 of the
Bankruptcy Code."

(e)    <u>Subsection 5.1</u> of the Credit Agreement is deemed amended by adding thereto the
following new clauses (t) through (x):

"(t)    <u>Daily Collateral Reports</u>. On each Business Day, the Loan Parties shall
provide to Wells Fargo a summary, in form and substance acceptable to
Wells Fargo, of collections on account of the preceding day which were
payment against Accounts which existed prior to the Petition Date and
against Accounts which arose after the Petition Date.

(u)    <u>Weekly Budget Reports; Extended Budget</u>. Within two (2) Business Days
after the end of each week, a reconciliation, in form and substance
acceptable to Wells Fargo substantially consistent with form of Budget
annexed to the Interim Financing Order, of the actual cash receipts and
disbursements of the Companies and existing Advances under this
Agreement for such week to the budgeted line item amounts set forth in
the Budget for such week. In the event that any Indebtedness remains
outstanding as of July 15, 2011, Companies shall, no later than July 30,
2011, deliver to Wells Fargo an updated Budget prepared on a basis
consistent with the Budget annexed to the Interim Order, covering the

period through November 30, 2011 (or such other date as Wells Fargo shall agree).

(v) Trustee Reports. All operating reports provided to the Office of the United States Trustee for the District of New Jersey.

(w) Chapter 7 Case Pleadings. Promptly after filing thereof, copies of all pleadings, motions, applications, financial information and other papers and documents filed by or on behalf of the Companies in the Chapter 7 Cases, which papers and documents shall also be given or served on Wells Fargo and Wells Fargo's counsel.

(x) Committee Reports. Promptly after sending thereof, copies of all written reports given by the Companies to any official or unofficial creditors' committee in the Chapter 7 Cases, if any, other than any such reports subject to privilege; provided that the Companies may redact any confidential information contained in any such report if they provides to Wells Fargo a summary of the nature of the information so redacted."

(f) Subsection 5.2 of the Credit Agreement is hereby amended by deleting such subsection in its entirety and substituting therefor the following:

"**5.2 Compliance with Budget.** All Advances will be subject to the following tests against the Budget. No later than the second Business Day of each calendar week, the Trustee or his designee shall submit to Wells Fargo a Budget Compliance Certificate and a report showing (i) actual cash collections and cash disbursements, on a weekly and cumulative basis through the previous Friday, and (ii) a comparison to the same periods in the Budget. The Budget will be tested on an aggregate and a line-item by line-item basis each week and on a cumulative basis. The Companies shall not permit:

(1) cash receipts to be less than 85% of projected cash receipts as set forth in the Budget on a weekly basis; or

(2) cash receipts to be less than 90% of projected cash receipts as set forth in the Budget on a cumulative basis (for any period commencing as of the Closing Date);

(3) cash disbursements for any calendar week (in the aggregate and for each line item in the Budget) to exceed 115% of projected cash disbursements as set forth in the Budget on a weekly basis; and

(4) cash disbursements (in the aggregate and for each line item in the Budget) to exceed 110% of projected cash disbursements as set forth in the Budget on a cumulative basis (for any period commencing as of the Closing Date)."

(g)    Subsection 5.3 of the Pre-Petition Credit Agreement is deemed amended by deleting clause (iv) of such subsection in its entirety.

(h)    Section 5 of the Pre-Petition Credit Agreement is deemed further amended by adding thereto the following new subsection 5.30:

> **"5.30    Financing Orders; Administrative Priority; Lien Priority; Payment of Claims.** The Companies will not:
>
> (a)    at any time, seek, consent to or suffer to exist any reversal, modification, amendment, stay or vacation of any of the Financing Orders, except for modifications and amendments agreed to by Wells Fargo;
>
> (b)    at any time, suffer to exist a priority for any administrative expense or unsecured claim against any Company (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 327, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c) 726 and 1114 of the Bankruptcy Code) equal or superior to the priority of Wells Fargo in respect of the Indebtedness;
>
> (c)    at any time, suffer to exist any Lien on the Collateral having a priority equal or superior to the Liens in favor of Wells Fargo in respect of the Collateral, except for Permitted Liens; and
>
> (d)    prior to the date on which all Indebtedness have been fully paid and satisfied, the Loan Parties shall not pay any administrative expense claims except (i) Post-Petition Indebtedness due and payable hereunder, (ii) administrative expenses incurred in the ordinary course of the Loan Parties' business as contemplated by this Agreement and the Budget, and (iii) administrative expenses which are included in the Carveout."

(i)    Subsection 6.1 of the Pre-Petition Credit Agreement is deemed amended by (i) deleting the text of clauses (f) and (g) thereof in their entirety and substituting therefor, in each case, "Intentionally deleted", and (ii) adding to such subsection the following new clause (s):

> "(s)    The occurrence of the "Termination Date" or an "Event of Default", as each such term is defined in the Financing Orders;"

(j)    Section 7 of the Pre-Petition Credit Agreement is deemed amended by adding thereto the following new subsections 7.16 and 7.17, as follows:

> **"7.16    Wells Fargo as Party-in-Interest.** The Companies hereby stipulate and agree that Wells Fargo is and shall remain a party in interest in each of the Chapter 7 Cases and shall have the right to participate, object and be heard in any motion or proceeding in connection therewith. Nothing in this Agreement or any other Pre-Petition Loan Document or Post-Petition

Financing Document shall be deemed to be a waiver of any of Wells Fargo's rights or remedies under applicable law or documentation. Without limitation of the foregoing, Wells Fargo shall have the right to make any motion or raise any objection it deems to be in its interest (specifically including but not limited to objections to use of proceeds of the Advances, to payment of professional fees and expenses or the amount thereof, to sales or other transactions outside the ordinary course of business or to assumption or rejection of any executory contract or lease), provided that Wells Fargo will not exercise such right if the action or inaction by the Companies which is the subject of such motion or objection is expressly permitted by any covenant or provision of this Agreement.

**7.17    Application of Payments to Indebtedness; Application of Proceeds of Collateral.**

(a)    All proceeds from the sale of Collateral, whether realized through a sale or disposition of Collateral or otherwise, shall be immediately paid in cash by the Companies to Wells Fargo, and shall applied by Wells Fargo (i) first in satisfaction of outstanding Pre-Petition Indebtedness, and (ii) second in satisfaction of outstanding Post-Petition Indebtedness under this Agreement.

(b)    All payments of Indebtedness by the Companies to Wells Fargo shall be made as and when due hereunder, and shall applied by Wells Fargo (i) first in satisfaction of outstanding Pre-Petition Indebtedness, and (ii) second in satisfaction of outstanding Post-Petition Indebtedness under this Agreement."

(k)    **Exhibit A** to the Pre-Petition Credit Agreement is deemed amended as follows:

(i)    by deleting each of the following defined terms and substituting therefor, respectively, the defined term appearing in the Interim Order or below:

"Agreement" means this Credit and Security Agreement, as ratified and amended pursuant to the Financing Orders, and as further amended, modified, restated or supplemented from time to time.

"Loan Documents" means this Agreement, the Revolving Note, the Master Agreement for Treasury Management Services, each Guaranty, the General Security Agreement, each Subordination Agreement, the Intercreditor Agreement, the Financing Orders and the other Security Documents, together with every other agreement, note, document, contract or instrument to which Company now or in the future may be a party and which may be required by Wells Fargo in connection with, or as a condition to, the execution of this Agreement. Any documents or other agreements entered into between Company and Wells Fargo that relate to any swap, derivative, foreign exchange, hedge, or

similar product or transaction, or which are entered into with an operating division of Wells Fargo other than Wells Fargo Capital Finance, shall not be included in this definition.

"Maturity Date" means August 26, 2011.

"Security Documents" means this Agreement, each Copyright Security Agreement, each Patent Security Agreement, each Trademark Security Agreement, each Collateral Pledge Agreement, the Life Insurance Assignment, and any other Prepetition Loan Document, Postpetition Loan Document, and other document delivered to Wells Fargo from time to time to secure the Indebtedness.

(ii)    by adding thereto the following new defined terms, each such term to be inserted into **Exhibit A** in the appropriate alphabetical order:

"Budget Compliance Certificate" means a written certificate in form reasonably satisfactory to Wells Fargo, signed by the Trustee or his designee, delivered weekly to Wells Fargo pursuant to Section 5.2(u) of this Agreement, which shall, inter alia, (i) reflect the Companies' cash receipts and cash disbursements for the immediately preceding week, including a comparison of such cash receipts and cash disbursements with those projected for such week in the Budget, (ii) confirm that the proceeds of the Advances to be used during the upcoming week are for one of the types of cash disbursements set forth in the Budget and in compliance with the maximum amounts permitted to be expended thereunder for the relevant time period in accordance with the Budget, and (iii) certifying that no Default or Event of Default has occurred, or, if a Default or an Event of Default has occurred, that a Default or Event of Default has occurred together with the description of such Default or Event of Default.

"Closing Date" means the date upon which the Interim Financing Order has been entered and all conditions precedent to the initial Advance and this Agreement have been satisfied or waived by Wells Fargo in writing.

"Financing Orders" means each and both the Interim Order and the Final Order.

"Lease" shall have the meaning given such term under the UCC.

"Postpetition Financing" has the meaning set forth in the Financing Orders.

"Real Property" means all real property owned by the Companies and all real property which the Companies have any rights of possession (including without limitation the Premises).

## **EXHIBIT 2**

Budget

Operating Ch. 7 Weekly Cash Flow 04-21-2011v10

DRAFT

Operating Co. 7 Weekly Cash Flow 04-22-2011-v0

**DRAFT**

| | ACT | ACT | ACT | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | | | | | | | | | | |
| Week Ending | 4/15/2011 | 4/22/2011 | 4/29/2011 | 4/22/2011 | 4/29/2011 | 5/6/2011 | 5/13/2011 | 5/20/2011 | 5/27/2011 | 5/27/2011 | 6/3/2011 | 6/10/2011 | 6/17/2011 | 6/24/2011 | 7/1/2011 | 7/8/2011 | 7/15/2011 | 7/22/2011 | 7/29/2011 | 8/5/2011 | 8/12/2011 |
| Net Inventory Borrowing Base | 5,466.9 | 5,233.4 | 5,035.5 | 4,999.8 | 5,107.2 | 5,146.3 | 5,274.3 | 5,274.3 | 5,274.3 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| **Gross Borrowing Base** | 14,623 | 14,237.4 | 14,185.7 | 13,936.5 | 13,076.0 | 12,572.0 | 14,102.3 | 13,406.5 | 12,760.8 | 6,620.1 | 5,795.8 | 4,842.3 | 3,765.8 | 3,424.4 | | | | | | | |
| **Reserves** | | | | | | | | | | | | | | | | | | | | | |
| Bank Reserve | (575.0) | (575.0) | (575.0) | (575.0) | (575.0) | | | | | | | | | | | | | | | | |
| Canada Employee Reserve | (170.0) | (170.0) | (170.0) | (170.0) | (170.0) | | | | | | | | | | | | | | | | |
| Standby LC (NJ Warehouse) | | | | | | | | | | | | | | | | | | | | | |
| Standby LC (...) | | | | | | | | | | | | | | | | | | | | | |
| **Total Reserves Held** | (745.0) | (745.0) | (745.0) | (745.0) | (745.0) | | | | | | | | | | | | | | | | |
| **Net Borrowing Base** | 13,877.3 | 13,492.4 | 13,440.7 | 13,196.5 | 12,378.3 | 13,075.0 | 14,102.3 | 13,406.5 | 12,760.8 | 6,620.1 | 5,795.8 | 4,842.3 | 3,765.8 | 3,424.4 | 3,243.3 | 3,068.7 | 2,947.8 | 213.8 | 0.0 | 0.0 | |
| Less: Revolver Outstanding | 13,217.4 | 13,119.4 | 13,471.1 | 13,445.9 | 13,009.6 | 14,227.7 | 13,156.6 | 12,413.7 | 11,952.6 | 8,684.4 | 5,795.8 | 4,665.2 | 4,464.4 | 4,327.6 | 4,296.1 | 4,066.6 | 4,098.2 | 213.8 | 0.0 | 0.0 | |
| **Net Availability** | 600.0 | 373.0 | 61.0 | 740.0 | (128.0) | (382.7) | | | | | | | | | | | | (185.4) | (185.4) | (185.4) | |
| **Net Availability - Assuming All O/S Checks Cleared - as of   # 554.4** | 201.8 | 271.4 | 689.3 | 786.6 | (119.8) | (587.7) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (185.4) | (185.4) | (83.4) | (7.4) |

Operating Ch. 7 Weekly Cash Flow 04-21-2011 v10

The Nutra Companies, Inc.
Weekly Cash Flow

DRAFT

| (in US 000s) | Week # | | | | | | | | Filing 4/22 | | | | | Auction 5/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ending | 3/4/2011 | 3/11/2011 | 3/18/2011 | 3/25/2011 | 4/1/2011 | 4/8/2011 | 4/15/2011 | 4/22/2011 | 4/29/2011 | 5/6/2011 | 5/13/2011 | 5/20/2011 | 5/27/2011 | 6/3/2011 |
| | | ACT | ACT | ACT | ACT | ACT | ACT | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ |
| **MEMO SALES** | | | | | | | | | | | | | | |
| Total US Sales (Gross) | | 1,269.8 | 1,149.4 | 1,146.1 | 939.5 | 991.6 | 991.6 | 1,174.9 | | | | | | |
| Total Canada Sales (Gross) | | 363.2 | 319.4 | 376.2 | 649.9 | 414.5 | 245.4 | 202.0 | 200.0 | 200.0 | 178.1 | | | |
| | | | | | | | | | | | | 3,920.3 | 923.6 | |
| | | | | | | | | | | | | 637.5 | 637.5 | 637.5 | 796.6 |
| | | | | | | | | | | | | 0.0% | 39.9% | 39.9% |
| **CASHFLOW** | | | | | | | | | | | | | | |
| **CASH INFLOWS** | | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | | |
| A/R Weekly Forecast (US) | | 1,134.6 | 873.9 | 810.4 | 1,682.3 | 968.0 | 63.3 | 1,138.5 | 850.0 | 750.0 | 700.0 | 700.0 | 1,062.5 | 637.5 | 637.5 |
| A/R Weekly Forecast (Canada) | | 336.3 | 334.0 | 288.0 | 296.8 | 378.2 | 321.9 | 316.3 | 450.0 | 450.0 | | | | |
| Additional Vendor Payments Deployed | | | | 3 | | | | | | | | | | |
| Receivables on Licenses | | 30.9 | 14.5 | 13.4 | 13.1 | 1.2 | 32.0 | 6.0 | | | | | | |
| Proceeds from Liquidation | | | | | | | | 10 | | | | | | |
| Non-A/R Cash Receipts | | 85.7 | 109.5 | 130.0 | 88.1 | 87.6 | 92.3 | 19.7 | | | | | | |
| **TOTAL CASH INFLOWS** | | 1,470.9 | 1,210.9 | 1,098.4 | 1,979.2 | 1,346.2 | 1,405.7 | 1,454.7 | 1,300.0 | 750.0 | 700.0 | 700.0 | 1,062.5 | 637.5 | 637.5 |
| **CASH OUTFLOWS** | | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | | |
| **Non-Payroll** | | | | | | | | | | | | | | |
| Merchandise Vendors (Direct Import) | | 494.4 | 489.1 | 328.1 | 145.2 | 324.1 | | 42.0 | | | | | | |
| Merchandise Vendors | | | | 32.5 | | | | | | | | | | |
| Showroom Rent | | | | 97.3 | | | | | | | | | | |
| Facility Rent | | 116.1 | 40.0 | 35.3 | | | 106.3 | | | | | 285.0 | | |
| External Sales Agent Commissions | | | 16.5 | | 3.6 | 6.0 | 10.0 | | | | | | | |
| Contract Labor | | 2.8 | 2.0 | 1.8 | | | 4.8 | | | | | | | |
| Professional Fees | | 98.0 | 76.9 | 106.9 | 64.2 | 80.6 | 80.6 | 182.7 | 603.5 | | 157.2 | | 81.3 | |
| Legal Fees | | | 73.4 | 64.6 | 55.5 | 41.7 | 17.0 | 115.0 | | | | | | 10.5 |
| Equipment Leases | | | 13.5 | 4.8 | 9.5 | 3.9 | 2.6 | 73.3 | | | | | | 113.8 |
| Bank Fees | | 10.5 | 18.5 | | | | 14.9 | 2.2 | 0.5 | 0.5 | 10.0 | | | 10.0 |
| Employee Benefits | | 114.4 | 25.6 | 22.2 | 46.2 | 112.2 | 68.7 | 25.0 | 170.0 | | 20.0 | | | |
| Credit Card Payments | | 9.1 | | 54.3 | | | | | | | | | | |
| Services / Supplies | | 6.0 | 15.8 | 33.0 | 6.4 | 11.9 | 9.8 | 5.4 | 1.4 | | 5.5 | | 41.5 | |
| Telecom / IT | | | 47.2 | 15.4 | 23.2 | 17.7 | 17.7 | 4.5 | 4.5 | 21.0 | 11.6 | 0.7 | 34.7 | 0.5 |
| Utilities | | | 1.7 | 6.4 | 6.4 | 0.1 | | 11.0 | | 1.0 | 11.0 | 0.5 | 15.0 | 5.0 |
| Employee A/P Payments | | 22.5 | 1.2 | 4.9 | 8.2 | 12.8 | 2.8 | 0.1 | | | 1.0 | | 30.0 | 1.0 |
| Taxes/Government Fees | | 1.0 | 0.1 | 46.9 | 0.0 | 6.7 | 1.6 | | 0.5 | | | | 1.1 | |
| Product Testing Fees | | 20.0 | 15.0 | | 15.0 | 15.0 | | 2.8 | | | | | | |
| **Total Non-Payroll** | | 385.5 | 321.0 | 360.1 | 283.4 | 288.4 | 341.4 | 301.8 | 479.2 | 625.9 | 319.1 | 183.2 | 187.4 | 37.2 | 126.1 |
| **Payroll** | | | | | | | | | | | | | | |
| NJ Payroll | | 426.3 | 219.3 | 383.2 | | 390.7 | 189.2 | 370.0 | | 241.1 | 20.0 | | | | 88.4 |
| CA / NC Payroll (includes some NJ) | | | 112.9 | | 169.5 | | 112.0 | | 150.0 | 76.5 | | 110.2 | | | |
| Field Sales Commissions | | | | | | | | | | | | | | |
| **Total Payroll** | | 426.3 | 332.2 | 383.2 | 169.5 | 390.7 | 301.2 | 370.0 | 150.0 | 317.6 | 20.0 | 110.2 | | 89.4 | |
| **Intercompany Transfers OUT** | | | | | | | | | | | | | | |
| Korea | | 239.3 | 225.2 | 122.0 | 140.0 | 250.0 | 200.0 | 205.0 | 697.5 | | 10.0 | | 0.7 | |
| Amman (Canada) | | | | | 157.0 | | | | 75.0 | | | | | |
| **Total Intercompany Transfers** | | 239.3 | 225.2 | 122.0 | 297.0 | 250.0 | 200.0 | 205.0 | 772.5 | | | | | |
| **TOTAL CASH OUTFLOWS** | | 1,051.1 | 878.4 | 865.3 | 749.9 | 929.1 | 842.6 | 876.8 | 1,401.7 | 943.5 | 339.1 | 293.4 | 187.4 | 126.6 | 126.1 |
| **NET CASH FLOW** | | 419.8 | 332.5 | 233.1 | 1,229.3 | 417.1 | 563.1 | 577.9 | (101.7) | (193.5) | 360.9 | 406.6 | 875.1 | 510.9 | 511.4 |

Operating Ch. 7 Weekly Cash Flow 04-21-2011.xl0

**DRAFT**

The Ritz Camera Centers, Inc.
Weekly Cash Flow
(in US 000's)

| | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | PROJ | Total For Period Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week #** | | | | | | | | | | | | | |
| **Week Ending** | 6/10/2011 | 6/17/2011 | 6/24/2011 | 7/1/2011 | 7/8/2011 | 7/15/2011 | 7/22/2011 | 7/29/2011 | 8/5/2011 | 8/12/2011 | 8/19/2011 | 8/26/2011 | |
| **MEMO SALES** | | | | | | | | | | | | | |
| Total US Sales (Gross) | - | - | - | - | - | - | - | - | - | - | - | - | |
| Total Canada Sales (Gross) | - | - | - | - | - | - | - | - | - | - | - | - | |
| **CASH INFLOWS** | | | | | | | | | | | | | |
| AR Weekly Forecast (US) | 793.2 | 793.3 | 939.9 | 320.0 | 160.0 | 142.5 | 75.0 | 75.0 | 125.6 | | | | 8,010.6 |
| AR Weekly Forecast (Canada) | - | - | - | - | - | - | - | 2,362.0 | - | - | - | - | 2,362.0 |
| Non-AR Cash Receipts | - | - | - | - | - | - | - | - | - | - | - | - | 125.0 |
| Proceeds from Liquidation | - | - | 820.8 | - | - | - | - | 1,758.1 | - | - | - | - | 5,862.2 |
| **TOTAL CASH INFLOWS** | 793.2 | 793.3 | 1,760.7 | 320.0 | 160.0 | 142.5 | 75.0 | 4,195.1 | 125.6 | - | - | - | 16,359.8 |
| | 38.9% | 38.9% | 38.9% | 38.9% | 38.9% | 38.9% | 38.9% | 38.9% | 38.9% | | | 38.9% | |
| **CASH OUTFLOWS** | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | |
| Merchandise Vendors | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Merchandise Vendors (Direct Import) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Additional Vendor Payments Deployed | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Royalties on Licenses | - | - | - | 60.0 | - | - | - | - | - | - | - | - | 140.0 |
| Freight & Duty | - | - | - | - | - | - | - | - | - | - | - | - | 54.8 |
| **Total** | - | - | - | 60.0 | - | - | - | - | - | - | - | - | 194.8 |
| **Non-Payroll** | | | | | | | | | | | | | |
| Facility Rent | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Showroom Rent | - | - | - | 5.0 | - | - | - | - | - | - | - | - | 295.0 |
| External Sales Agent Commissions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Contract Labor | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | 22.0 | 128.1 | 39.8 | 50.3 | 6.5 | 7.2 | 3.6 | 1.5 | 125.7 | 70.0 | 10.0 | | 1,431.0 |
| Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment Leases | 1.0 | 2.0 | - | - | - | - | - | - | - | - | - | - | 10.5 |
| Bank Fees | - | - | - | - | - | - | - | - | - | - | - | - | 33.0 |
| Employee Benefits | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Credit Card Payments | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Services / Supplies | 0.5 | 1.1 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 5.0 | - | - | - | - | 70.3 |
| Telecom / IT | 3.8 | 18.5 | 1.8 | 4.1 | 4.5 | 15.3 | 0.5 | - | - | - | - | - | 136.5 |
| Utilities | - | - | - | 1.0 | - | - | - | - | - | - | - | - | 34.1 |
| Employee AP Payments | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Taxes/Government Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Product Testing Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Payroll** | 27.3 | 149.7 | 42.1 | 60.9 | 11.5 | 23.0 | 4.6 | 6.5 | 125.7 | 70.0 | 10.0 | | 2,010.3 |
| **Payroll** | | | | | | | | | | | | | |
| NJ Payroll | 45.9 | - | 41.7 | 27.0 | 27.0 | - | 19.0 | - | - | 70.0 | - | - | 574.3 |
| CA / NC Payroll (includes some NJ) | - | - | - | - | - | - | - | - | - | - | - | - | 96.5 |
| Field Sales Commissions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Payroll** | 45.9 | - | 41.7 | 27.0 | 27.0 | - | 19.0 | - | - | 70.0 | - | - | 670.7 |
| **Intercompany Transfers OUT** | | | | | | | | | | | | | |
| Annsn's (Canada) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Korea | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Intercompany Transfers** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL CASH OUTFLOWS** | 73.2 | 149.7 | 83.8 | 120.9 | 38.5 | 23.0 | 23.6 | 6.5 | 125.7 | 70.0 | 10.0 | | 2,875.8 |
| **NET CASH FLOW** | 720.1 | 643.5 | 1,676.9 | 199.1 | 121.5 | 119.5 | 51.4 | 4,188.6 | (0.0) | (70.0) | (10.0) | | 13,484.0 |

**The Klein Company Inc.**
Report Title:
As of:

Disbursement Detail — 22-Apr

| Supplier Group | Description | Vendor | ACT 1 3/4/2011 | ACT 2 3/11/2011 | ACT 3 3/18/2011 | ACT 4 3/25/2011 | ACT 5 4/1/2011 | ACT 6 4/8/2011 | PROJ 7 4/15/2011 | PROJ 8 4/22/2011 | PROJ 9 4/29/2011 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Facility Rent | | Cranbury | 106,250 | | | | | 106,250 | | | | 245,000 | | | | | | |
| | | Rite Maller | 7,754 | | | | | | | | | | | | | | | |
| | | Encore Partners | | | | | | | | | | | | | | | | |
| | | Cardinal Health | 40,000 | 40,000 | | | | | | | | 40,000 | | | | | | |
| | Facility Rent | Xerox/Okay - NC | 2,118 | | | | | | | | | | | | | | | |
| Total Facility Rent | | | 116,123 | 40,000 | | | | 106,250 | | | | 285,000 | | | 5,000 | | | |
| Showroom Rent | | Americanmart | | | 32,766 | | | | | | | | | | | | | |
| | | Merchandise Mart | | | | | | | | | | | | | | | | |
| | | LA Mart | | | 2,551 | | | | | | | | | | | | | |
| | Showroom Rent | Benaroya | | | 35,317 | | | | | | | | | | | | | |
| Total Showroom Rent | | | | | | | | | | | | | | | | | | |
| Total External Commissions | External Sales Agent Co. Various Independ | | 16,469 | | | | | 19,019 | | | | | | | | | | |
| Contract Labor | | Next Day | 2,818 | 2,031 | | 2,393 | 5,154 | 4,755 | | | | | | | | | | |
| | | Staffing Alternative | | | | | | | | | | | | | | | | |
| | | Express | | | | | | | | | | | | | | | | |
| | Contract Labor | Other | | 1,776 | 1,256 | 961 | | | | | | | | | | | | |
| Total Contract Labor | | | 2,818 | 2,031 | 1,776 | 3,449 | 6,035 | 4,755 | | | | | | | | | | |
| Total Professional Fees | | Midwest | | 9,731 | | | | 7,640 | | | | | | | | | | |
| | | Jim Medonna Marketing | | | 21,850 | | | | | | | | | | | | | |
| | | YB Law | | | | | | 12,560 | | 20,000 | | | | | | | | |
| | | Norman Fast | 15,000 | 15,000 | 20,000 | | 15,976 | | | | 65,000 | | 37,000 | | | | | |
| | | BDO | | | 7,500 | | | | | 72,700 | | | | | | | | |
| | | The Assurance Group | | | 37,775 | 12,285 | | | 8,000 | | | | | | | | | |
| | | York International/ACCO | 37,775 | 33 | | | | | | | | | | | | | | |
| | | Atwell Curtis | | | 10,000 | | | | 7,500 | | | | | | | | | |
| | | Hensight | | 800 | 4,295 | 3,827 | 267 | 867 | 2,500 | | 3,500 | | | 500 | | | | |
| | | ADP | 33,274 | 24,765 | 33,233 | 35,299 | 35,671 | 50,000 | 50,000 | 60,000 | | | | 500 | | 500 | | 500 |
| | | CTG | | | | | | | | | | | | | | | | |
| | | BK Pro Fees (see tab) | 66,049 | 50,348 | 76,878 | 105,500 | 64,199 | 68,607 | 80,600 | 162,700 | 600,000 | 91,691 | 43,559 | 21,523 | 128,102 | | | |
| Professional Fees | | | | | | | | | | | 603,500 | 157,191 | 81,259 | 19,454 | 113,825 | 22,023 | 128,102 |
| | Legal Fees (Gibson) | | 73,438 | 14,559 | | 5,000 | 50,457 | 41,728 | 99,000 | 115,000 | | | | | | | |
| | Legal Fees | | | 50,000 | | 5,000 | | | 2,500 | 115,000 | | | | | | | | |
| Total Legal | | | 73,438 | 64,559 | 64,559 | 85,457 | 41,728 | 153,000 | 115,000 | | | | | | | | |
| Equipment Leases | | Apple | 68 | | | | | | | | | | | | | | | |
| | | BB&T | | | | | | | | | | | | | | | | |
| | | Canon Financial | 2,604 | | 643 | 313 | | | | | | | | | | | | |
| | | CIT Technology | | 4,840 | | | | | | | Laptop return expense---> | | | | 10,000 | | | |
| | | De Lage Landen Financial | 4,909 | | 4,747 | | | | | | 537 | 537 | | | | | | |
| | | LEASE LINE INC | 1,004 | | | | | | | | | | | | | | | |
| | | Pitney Bowel Global | 3,965 | | 8,870 | 3,619 | 2,563 | 3,349 | | | | | | | | | | |
| | Equipment Leases | Konica/Leaf | | | 3,217 | | | 4,000 | | | | | | | | | | |
| Total Equipment | | | 13,481 | 4,840 | 9,477 | 3,932 | 2,563 | 7,349 | 1,088 | | 837 | 837 | 10,000 | | | | |
| Freight & Duty | | A&Ways | | | | | | | | 25% | 25% | 25% | 0% | 0% | | | |
| | | Fedex | 7,523 | 21,617 | 21,645 | 24,118 | 28,929 | 38,031 | 11,000 | 5,000 | 5,000 | | | | | | |
| | | US Customs | 21,200 | 60,359 | 53,377 | 53,380 | 51,869 | 46,037 | 8,750 | 8,750 | 8,750 | | | | | | |
| | | UPS | 9,105 | 11,251 | 9,528 | 482 | 1,327 | | 2,500 | 2,500 | 2,500 | | | | | | |
| | Freight | Other | 46,333 | 16,032 | 45,427 | 10,555 | 2,528 | 6,866 | 16,265 | | | | | | | | |
| Total Freight | | | 85,675 | 109,468 | 129,977 | 88,053 | 87,788 | 82,261 | 18,794 | 16,250 | 16,250 | 16,250 | | | | | |
| Royalties | | Quarterly | 30,870 | 140,980 | | | | | | | | | | | | | |
| | | NFL ($190K + 9 equal pays) | | | | | | | | | | | | | | | 80,000 | |
| | | MLB | | | | | | | | | | | | | | | | |
| | | Elk | | 2,486 | | | | | | | | | | | | | | |
| | | Disney | | | | | | | | | | | | | | | | |
| | | NHL | | | | | | | | | | | | | | | | |
| | Royalties | Monthly | | | 12 | | 1,181 | | | 8,000 | | | | | | | | |

**The Ross Companies, Inc.**
Report Title:
Disbursement Detail

| Supplier Group | Description | Vendor | ACT 1 | ACT 2 | ACT 3 | ACT 4 | ACT 5 | ACT 6 | PROJ 7 | PROJ 8 | PROJ 9 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Banking** | | | 34,070 | 143,446 | | 13,347 | 1,181 | | 6,000 | | | | | | | | | |
| **Total Payables** | | | 34,070 | 143,446 | | 13,347 | 1,181 | | 6,000 | | | | | | | | | |
| **Banking** | Bank Fees | Wells/Merchant Bank | 10,483 | 18,540 | | | | 14,559 | 22,094 | | | | | | | 20,000 | | 1,000 | 2,000 |
| | | | 10,483 | 18,540 | | | | 14,559 | 22,094 | 25,000 | | | 10,000 | | 20,000 | | 80,000 | 1,000 | 2,000 |
| **Benefits - Insurance/Health Care** | | Aetna (Claims) | 51,494 | 23,790 | 22,159 | 46,238 | 37,560 | 68,663 | | | | | | | | | | |
| | | Aetna (Admin) | 43,664 | | | | 41,950 | | 25,000 | 170,000 | | | | | 2,114 | | | |
| | | ACS Benefit (PayRex) | 278 | 338 | | | 419 | | | | | | | | | | | |
| | ACCO (replaced by York) | | | | | | | | | | | | | | | | | |
| | | Fidelity Security Life | 1,409 | | | | 1,420 | | | | | | | | | | | |
| | | Prudential | 14,522 | | | | 21,655 | | | | | | | | | | | |
| | | Other | 111,398 | 1,511 | 328 | | 0,140 | | | | | | | | | | | |
| **Total Benefits Insurance/Health Care** | | | 111,398 | 25,939 | 22,159 | 46,239 | 112,164 | 68,663 | 25,000 | 170,000 | | | | | | | | |
| **Credit Cards** | | Diners Club | 9,905 | | 54,266 | | | | | | | | | | | | | |
| | | American Express | 9,905 | | | | | | | | | | | | | | | |
| **Total Credit Cards** | | | 9,905 | | 54,266 | | | | | | | | | | | | | |
| **Credit Card Payments** | | | | | | | | | | | | | | | | | | |
| **Services/Supplies/General** | | ACE DISTRIBUTION SERV | | | | | | | | | | | | | | | | |
| | | ADT SECURITY SERVICES | | | 178 | | 1,796 | | | 2,836 | | | 2,836 | | | 178 | | | |
| | | AIR TECH SYSTEMS OF NE | | 1,899 | | | | | | | | | | | | | | |
| | | ALADDIN TRAVEL AND INT | | | | | | | | | | | | | | | | |
| | | CANON FINANCIAL SERV | | 22,159 | 22,159 | 46,238 | | 68,663 | 25,000 | 170,000 | | | | | | | | |
| | | CAPITOL STEEL PRODUCT | 2,700 | | | | | | | | | | | | | | | |
| | | COFFEE AMBASSADOR | | | | | | | | | | | | | | | | |
| | | COFFEE DISTRIBUTING CC | | | | 274 | | | | | | | | | | | | |
| | | COMPLETE OFFICE OF CA | | 83 | | | | | | | | | | | | | | |
| | | CRYSTAL SPRINGS WATEI | | | | | | | | | | | | | | | | |
| | | Intl Paper | | | | | | | | | | | | | | | | |
| | | PER-FORMS | 2,351 | 990 | 2,432 | | | | | | | | | | | | | |
| **Business forms** | | PITNEY BOWES PRESORT | 6,000 | | | | | 29 | | | 885 | 58 | | | | | | |
| | | KONICA MINOLTA BUSINE | | 191 | 1,056 | | | | | | | 1,048 | 5,000 | | | | | |
| | | LANDSBERG | | | | 1,159 | 5,000 | 5,654 | 2,500 | | | 244 | | | | | | |
| | | LAWRENCE SERVICE CO. | | 462 | | | | | | | | | | | | | | |
| | | NORTHEASTERN BUILDIN | | 312 | | | | | | | | | | | | | | |
| | | ONE NETWORK ENTERPRI | | | | | | | | | | | | | | | | |
| | | ORION | | | | | | | | | | | | | | | | |
| | | KICKS ENTERTAINMENT | | | | | | | | | | | | | | | | |
| | | POSTMASTER | | | 5,000 | | | | | | | | | | | | | |
| | | PREMIER BARCODE SYST | | | | | | | | 1,284 | | | | | | | | |
| | | PROTECTIVE MEASURES | | 2,565 | | | | | | | | | | | | | | |
| | | QUICKOR USA LLC | | 874 | | 1,015 | | | 800 | 550 | | | | | | | | |
| **Cranbury trucks and conveyor maint** | | RAYMOND OF NEW JERSE | | 3,242 | | 1,824 | | | | | | | | | | | | |
| **Landscaping** | | REGENCY MAINTENANCE | | | | | | | | | | | | | | | | |
| | | ROBERT E MOE | | | | | | | | | | | | | | | | |
| | | S G S JAMES INC. | 29 | 29 | | | 29 | | | | | | | | | | | |
| | | SIPDELIT | | | | | | | | | 5,000 | | | | | | | |
| | | STAPLES BUSINESS ADV/ | | 551 | 801 | | 1,258 | | | | | | | | | | | |
| | | ST CHARLES | | | | | | | | | | 272 | | | | | | |
| | | SUBURBAN PROPANE | | | 516 | | 346 | | | | | 3,890 | | | | | | |
| | | SYSTEMS & PROGRAMMIN | | | 3,990 | | | 381 | | | | | | | | | | |
| | | A & M Pest | | 112 | | | | | | | | | | | | | | |
| | | BOSLAND'S FLOWER SHO | | 207 | | | | | | | | | | | | | | |
| | | BUCKEYE BUSINESS PRO | | 230 | | | | | | | | | | | | | | |
| | | THE WESTIN (GD) | | | | | | | | | | | | | | | | |
| | | MCMASTER-CARR SUPPL\ | | | | | | | | | | | | | | | | |
| | | MISCELLANEOUS | | | | | | | | | | | | | | | | |
| **Total Services/Supplies/General** | Physical Inventory Costs | | 6,000 | 18,612 | 33,035 | 6,339 | 11,816 | 9,802 | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 600 |
| | | | 6,000 | 18,612 | 33,035 | 6,339 | 11,816 | 9,802 | 6,420 | 8,420 | 1,383 | 11,802 | 5,560 | 41,000 | 41,000 | | 500 | 1,100 |
| **Telecom / IT** | Services / Supplies | ABRAMS GENTILE ENTERT | | | | | | | | | | | | | | | | |
| **ERP software** | | APPRISE SOFTWARE INC | | | | | | | | | | | | | | | | |
| **Phone lines (converted) converted to serloc** | | AT&T | 2,264 | 8,820 | 8,820 | | | 8,820 | | | | | | | | | 8,820 | |

**The Russ Companies Inc.**
Report Title: Disbursements Detail

| Register Group | Description | Vendor | ACT 1 | ACT 2 | ACT 3 | ACT 4 | ACT 5 | ACT 6 | PROJ 7 | PROJ 8 | PROJ 9 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| phone lines (non-usa) converted to payrac | | AT&T - UNIVERSAL BILLER | - | 2,000 | - | 1,392 | - | - | - | 2,000 | - | - | - | 2,000 | - | - | - | 2,000 |
| Telecom/Hardware | | AVAYA FINANCIAL SERVIC | 9,217 | - | - | 9,717 | - | 59 | - | 74 | - | 125 | | | | | | |
| Laptop software | | EXEL COMMERCIAL | | | | | | 74 | | 41 | | | | | | | 41 | |
| EDI | | GXS | 1,185 | | | | | 1,471 | | 1,015 | 3,201 | | | | | | | |
| | | IBM | | 10 | | | | | | 10 | | | | | | | | |
| EDI | | MCI WORLDCOM | | | | | | | | 1,015 | 3,201 | | | | | | 3,201 | |
| | | NACR, INC. | | 1,134 | | 1,134 | | | | 1,134 | | 1,134 | | 1,134 | | | 1,134 | |
| Telecom | | OVERCOFFEE PRODUCTK | 6,505 | | | | | 6,321 | | | | | | | | | | |
| Phone System | | Paetec | | | | | | | | | 6,505 | | | 6,505 | | | | |
| | | PCTI INC | 7,297 | 2,946 | | | | | | | | | | | 7,297 | 2,946 | | 2,946 |
| Mabit. For servers | | SMS SYSTEMS MAINTENAI | 15,021 | | 4,011 | | 350 | 10,419 | | 7,500 | | 92 | 1,473 | 15,021 | | 4,011 | 43 | 4,011 |
| International MPLS Lines | | SPRINT | | | | | | | | 43 | | | | | | | | |
| | | SUPPLYONE NEW YORK | | | | | | | | 41 | | | | | | | | |
| | | USA MOBILITY WIRELESS | | | 5,231 | | | | 67 | | | 4,902 | | | | | | |
| | | VERIZON MOBILITY | 1,010 | | | | | | | | | 2,168 | | | | | | |
| | | VERIZON BUSINESS | 698 | | 975 | | | | | | | | | | | | 750 | |
| Utilities | | VITAL RECORDS INC. | 1,877 | 90 | 750 | | 94 | | | | | | | 750 | | | | |
| | | WORLD AT WORK | | | | | | | | 245 | | 490 | | | | | | |
| | | I TRADE NETWORK | | | | 4,167 | | | | | | 48 | | | | | | |
| | | R. R. BOWKER | | | | | | | | | | | | | | | 163 | |
| | | RONKO | | | 879 | 163 | | | | | | | | | | | | |
| Total Utilities | Utilities | | 1,877 | 90 | 64,387 | 64,387 | 94 | | | | | 1,000 | | 30,000 | 1,057 | | | |
| | | PSE&G | 64,387 | | | | | | | | | | | 30,000 | | | | |
| | | Metro Waste | | | | | | | | | | | | | | | | |
| Errorbyree AP Payments | | Louis Valente | | | | 57 | | 350 | | 1,000 | 500 | 500 | 500 | 500 | 500 | 500 | | |
| | | Ken Siemers | | | | | | | | | | | | | | | | |
| | | Other (SD) | 22,503 | 1,211 | 4,890 | 4,014 | 12,000 | 2,840 | | | | | | | | | | |
| Total Employee | Employee AP Payments | | 22,503 | 1,211 | 4,890 | 8,180 | 12,600 | 2,840 | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | | |
| Total Telecom, IT | | MISCELLANEOUS | 47,191 | 15,395 | 15,395 | 23,180 | 74 | 17,698 | 16,900 | 4,463 | 21,658 | 11,607 | 800 | 34,664 | 15,018 | 5,898 | 3,786 | 18,618 |
| Taxes/Government Fees | | PEER 1 DEDICATED HOST | 4,557 | | | | | | | | | | | | | | | |
| Taxes/Government Fees | Taxes/Government Fees | April, Oct & Sept Income Tax Payments Due | 1,013 | 125 | 46,654 | 25 | 6,708 | 1,587 | 2,066 | 500 | | | | | | | | |
| Testing Fees (Inventory) | Product Testing Fees | Testing Fees (Inventory) | 20,000 | 15,000 | | 15,000 | 15,000 | | | | | | | | | | | |
| Payroll | Payroll | NJ Payroll | 428,279 | | 383,242 | 390,729 | 390,729 | | 370,000 | | 241,133 | 110,172 | | 69,392 | | 45,879 | | |
| | | CA / NC Payroll (includes some NJ) | | 210,266 | | 169,546 | | 188,171 | | 150,000 | 78,465 | 20,000 | | | | | | |
| Payroll | | Field Sales Commissions | | 112,895 | | | | 111,600 | | | | | | | | | | |
| | Payroll | | 428,279 | 332,161 | 383,242 | 169,546 | 390,729 | 301,161 | 378,000 | 697,474 | 317,618 | 20,000 | 116,172 | | 89,392 | | 46,879 | |
| Intercompany | | Airven's (Canada) | 239,267 | 225,221 | 122,000 | 140,000 | 250,000 | 200,000 | 208,000 | 687,474 | | | | | | | 0 | |
| | | Korea | | | | 157,000 | | | | 75,000 | | | | | | | | |
| | Intercompany | Overseas Severance | 239,267 | 225,221 | 122,000 | 297,000 | 250,000 | 200,000 | 208,000 | 772,474 | | | | | | | | |
| Total Intercompany | | | 239,267 | 225,221 | 122,000 | 297,000 | 250,000 | 200,000 | 208,000 | 772,474 | | | | | | | | |
| Sum Disbursements | | | 1,167,573 | 1,131,267 | 955,390 | 851,342 | 1,018,028 | 934,791 | 902,230 | 1,401,644 | 905,789 | 355,336 | 309,612 | 187,133 | 126,957 | 209,533 | 73,187 | 449,720 |

Disbursements Detail

| Supplier Group | Description | Vendor | 12 6/24/2011 | 13 7/1/2011 | 14 7/8/2011 | 15 7/15/2011 | 16 7/22/2011 | 17 7/29/2011 | 18 8/5/2011 | 19 8/12/2011 | 20 8/19/2011 | 21 8/26/2011 | Total For Period Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Facility Rent | | Cranbury | | | | | | | | | | | 245,000 |
| | | Rita Miller | | | | | | | | | | | - |
| | | Encore Partners | | 5,000 | | | | | | | | | 50,000 |
| | | Cardinal Health | | | | | | | | | | | - |
| | | Xerox/Olery - INC | | | | | | | | | | | - |
| Total Facility Rent | Facility Rent | | - | 5,000 | - | - | - | - | - | - | - | - | 295,000 |
| Showroom Rent | | AmeriGourmet | | | | | | | | | | | - |
| | | Merchandise Mart | | | | | | | | | | | - |
| | | LA Mart | | | | | | | | | | | - |
| | | Benetuys | | | | | | | | | | | - |
| Total Showroom Rent | Showroom Rent | | - | - | - | - | - | - | - | - | - | - | - |
| Total External Sales Commissions | External Sales Agent Co Various Independ | | - | - | - | - | - | - | - | - | - | - | - |
| Contract Labor | | Next Day | | | | | | | | | | | - |
| | | Staffing Alternative | | | | | | | | | | | - |
| | | Express | | | | | | | | | | | - |
| | | Other | | | | | | | | | | | - |
| Total Contract Labor | Contract Labor | | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | | Mslmark | | | | | | | | | | | - |
| | | Jim Madonna Marketing | | | | | | | | | | | - |
| | | YEB Law | | | | | | | | | | | - |
| | | Norman Preat | | | | | | | | | | | - |
| | | BDO | | | | | | | | | | | - |
| | | The Assurance Group | | | | | | | | | | | - |
| | | Freelance Artists | | | | | | | | | | | - |
| | | Atwell Curtis | | | | | | | | | | | - |
| | | York International/ADCCO | 20,000 | | | | | | | | | | 122,700 |
| | | Henright | | | | | | | | | | | - |
| | | ADP | 500 | | 500 | 5,000 | | | | | | | 11,000 |
| | | CTG | 500 | | | | | | | | | | - |
| Total Professional Fees | Professional Fees | | 19,306 | 50,308 | 5,673 | 2,244 | 3,565 | 1,543 | 125,657 | | 70,000 | 10,000 | 1,297,269 |
| | | BK Pro Fees (see lab) | 39,806 | 50,308 | 6,473 | 7,244 | 3,565 | 1,543 | 125,657 | | 78,000 | 10,000 | 1,430,969 |
| Legal | | Litigation Settlement | | | | | | | | | | | - |
| Total Legal | Legal Fees | | - | - | - | - | - | - | - | - | - | - | - |
| | Legal Fees | | - | - | - | - | - | - | - | - | - | - | - |
| Equipment Leases | | Apple | | | | | | | | | | | - |
| | | BB&T | | | | | | | | | | | - |
| | | Canon Financial | | | | | | | | | | | - |
| | | CIT Technology | | | | | | | | | | | 10,000 |
| | | Dell Financial | | | | | | | | | | | - |
| | | De Lage Landen Financial | | | | | | | | | | | - |
| | | LEASE LINE INC | | | | | | | | | | | - |
| | | Pitney Bowes Global | | | | | | | | | | | - |
| | | KonicaLeaf | | | | | | | | | | | - |
| Total Equipment | Equipment Leases | | - | - | - | - | - | - | - | - | - | - | 16,537 |
| Laptop leases | | | | | | | | | | | | | - |
| Sales force laptops | | | | | | | | | | | | | 10,000 |
| Sales force laptops | | | | | | | | | | | | | - |
| Warehouse trucks | | | | | | | | | | | | | 537 |
| Freight & Duty | | All-Ways | | | | | | | | | | | - |
| | | Fedex | | | | | | | | | | | 21,000 |
| | | US Customs | | | | | | | | | | | 26,250 |
| | | UPS | | | | | | | | | | | 7,500 |
| | | Other | | | | | | | | | | | 10,517 |
| Total Freight | Freight | | - | - | - | - | - | - | - | - | - | - | 84,750 |
| Royalties | | Quarterly | | 60,000 | | | | | | | | | 1 |
| | | NFL ($10K x 9 equal pays) | | | | | | | | | | | 140,000 |
| | | MLB | | | | | | | | | | | - |
| | | BMI | | | | | | | | | | | - |
| | | Disney | | | | | | | | | | | - |
| | | NHL | | | | | | | | | | | - |
| | | Monthly | | | | | | | | | | | - |

printed on: 4/23/2011

Disbursements Detail

| Supplier Group | Description | Vendor | 6/24/2011 | 7/1/2011 | 7/8/2011 | 7/15/2011 | 7/22/2011 | 7/29/2011 | 8/5/2011 | 8/12/2011 | 8/19/2011 | 8/26/2011 | Total For Period / Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Royalties | Royalties | | | | | | | | | | | | 140,000 |
| Banking | Bank Fees | Wells/Merchant Bank | 66,000 | | | | | | | | | | 33,000 |
| Total Banking | | | | | | | | | | | | | 33,000 |
| Benefits - Insurance/Health Care | | Aetna (Claims) | | | | | | | | | | | |
| | | Aetna (Admin) | | | | | | | | | | | |
| | | ACS Benefit (Paylee) | | | | | | | | | | | |
| AICCO (replaced by York) | | Paskly Security Life | | | | | | | | | | | |
| | | Prudential | | | | | | | | | | | |
| | | Other | | | | | | | | | | | |
| Total Benefits Insurance/Health Car | | | | | | | | | | | | | |
| Employee Benefits | | | | | | | | | | | | | |
| Credit Cards | Credit Card Payments | American Express | | | | | | | | | | | |
| | | Diners Club | | | | | | | | | | | |
| Total Credit Cards | | | | | | | | | | | | | |
| Service/Supplies/General | | ACE DISTRIBUTION SERV | | | | | | | | | | | |
| | | ADT SECURITY SERVICES | | | | | | | | | | | |
| | | AIR TECH SYSTEMS OF N | | | | | | | | | | | |
| | | ALADDIN TRAVEL AND MTI | | | | | | | | | | | 3,014 |
| Copiers | | CANON FINANCIAL SERVI | | | | | | | | | | | |
| | | CAPITOL STEEL PRODUC | | | | | | | | | | | 2,114 |
| | | COFFEE AMBASSADOR | | | | | | | | | | | |
| | | COFFEE DISTRIBUTING CA | | | | | | | | | | | |
| | | COMPLETE OFFICE OF CA | | | | | | | | | | | |
| | | CRYSTAL SPRINGS WATE | | | | | | | | | | | |
| Business forms | | Intl Paper | | | | | | | | | | | |
| | | PER-FORMS | | | | | | | | | | | |
| | | PITNEY BOWES PRESORT | | | | | | | | | | | 1,933 |
| | | ORION | | | | | | | | | | | |
| | | ONE NETWORK ENTERPR | | | | | | | | | | | |
| | | NORTHEASTERN BUILDIN | | | | | | | | | | | |
| | | LAWRENCE SERVICE CO. | | | | | | | | | | | |
| | | LANDSBERG | | | | | | | | | | | |
| | | KONICA MINOLTA BUSINE | | | | | | | | | | | |
| | | KICKX ENTERTAINMENT | | | | | | | | | | | |
| | | POLAND SPRING WATER | | | | | | | | | | | |
| | | POSTMASTER | | | | | | | | | | | |
| | | PREMIER BARCODE SYST | | | | | | | | | | | 244 |
| | | PROTECTIVE MEASURES | | | | | | | | | | | |
| | | QUEACH USA LLC | | | | | | | | | | | |
| | | RAYMOND OF NEW JERSE | | | | | | | | | | | |
| | | REGENCY MAINTENANCE | | | | | | | | | | | 550 |
| | | ROBERT E. MOE | | | | | | | | | | | |
| | | S D S GASES INC. | | | | | | | | | | | 56 |
| | | SHRED-IT | | | | | | | | | | | |
| | | ST CHARLES | | | | | | | | | | | |
| | | STAPLES BUSINESS ADV | | | | | | | | | | | 5,000 |
| Cranbury trucks and conveyor maint | | SUBURBAN PROPANE | | | | | | | | | | | |
| Landscaping | | SYSTEMS & PROGRAMMII | | | | | | | | | | | |
| | | A-Mel Pest | | | | | | | | | | | 272 |
| | | BOSLANDS FLOWER SHO | | | | | | | | | | | 3,980 |
| | | BUCKEYE BUSINESS PRO | | | | | | | | | | | |
| | | KONICA MINOLTA (ED) | | | | | | | | | | | |
| | | THE WESTIN (ED) | | | | | | | | | | | |
| | | MCMASTER-CARR SUPPL | | | | | | | | | | | |
| | | MISCELLANEOUS | 500 | 500 | 500 | 500 | 500 | 5,000 | | | | | 11,500 |
| Total Service/Supplies/General | Services / Supplies | Fiscal Inventory Costs | 500 | 600 | 600 | 600 | 600 | 5,000 | | | | | 41,608 |
| | | | | | | | | | | | | | 76,273 |
| Telecom / IT | | ABRAMS GENTILE ENTER | | | | | | | | | | | |
| ERP software | | APPRISE SOFTWARE INC | | | | | | | | | | | |
| phone lines (non-cell) connected to payrlec | | AT&T | | | 8,820 | | | | | | | | 35,280 |

Disbursements Detail

The Pride Companies, Inc.
Report of the
As of:

| Supplier Group | Description | Vendor | 4/24/2011<br>I2 | 7/1/2011<br>I3 | 7/8/2011<br>I4 | 7/15/2011<br>I5 | 7/22/2011<br>I6 | 7/29/2011<br>I7 | 8/5/2011<br>I8 | 8/12/2011<br>I9 | 8/19/2011<br>I20 | 8/26/2011<br>I21 | Total For Period Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| phone lines (non-t/a) converted to pre-tic | | | | | | | | | | | | | |
| Telecom Hardware | | AT&T - UNIVERSAL BILLER | | | | | | | | | | | |
| | | AVAYA FINANCIAL SERVIC | | | | | | | | | | | |
| Laptop software | | EMAN INCORPORATED | | | | | | | | | | | 4,000 |
| | | EXEL COMMERCIAL | | | | | | | | | | | |
| | | GLOBAL CROSSING | 41 | | | | | | | | | | 74 |
| EDI | | GXS | | | | | | | | | | | 206 |
| EDI | | IBM | 3,201 | | | | | | | | | | 2,030 |
| | | MCI WORLD.COM | | | | | | | | | | | 12,606 |
| Telecom | | NICK INC | 1,194 | | | | | | | | | | 10 |
| | | OVERCOFFEE PRODUC-TK | | | | | | | | | | | 4,530 |
| Phone System | | Pactec | 300 | | | | | | | | | | 300 |
| | | | | | | | | | | | | | 13,005 |
| Maint. For services | | PCTI INC | | | | 2,346 | | | | | | | 16,105 |
| International MPLS Lines | | SMS SYSTEMS MAINTENA. | 43 | | 4,011 | | | | | | | | 30,721 |
| | | SPRINT | | | | | | | | | | | 1,473 |
| | | SUPPLYONE NEW YORK | | | | | | | | | | | |
| | | USA MOBILITY WIRELESS | | | | | | | | | | | |
| | | VERIZON MOBILITY | | | | | | | | | | | 4,902 |
| | | VERIZON BUSINESS | | | | | | | | | | | 2,168 |
| | | VITAL RECORDS INC. | | | | | | | | | | | 1,500 |
| | | WORLD AT WORK | | | | | | | | | | | |
| | | I TRADE NETWORK | | | | | | | | | | | 490 |
| | | R. R. BOWKER | 193 | | | | | | | | | | 374 |
| | | RONKO | | | | | | | | | | | |
| | | MISCELLANEOUS | 500 | 500 | 500 | 500 | 500 | | | | | | 6,500 |
| Total Telecom / IT | | PEER 1 DEDICATED HOST | 1,797 | 4,985 | 4,511 | 15,266 | 500 | | | | | | 136,482 |
| Utilities | | PSE&G | | | | | | | | | | | 30,000 |
| | | Midco Waste | | | | | | | | | | | 1,657 |
| | | Other | 1,000 | | | | | | | | | | 3,000 |
| Total Utilities | Utilities | | 1,000 | | | | | | | | | | 34,657 |
| Employee AP Payments | | Louis Valente | | | | | | | | | | | |
| | | Ken Siemers | | | | | | | | | | | |
| Total Employee | Employee AP Payments | Other (EG) | | | | | | | | | | | |
| Taxes/Government Fees | Taxes/Government Fees | | | | | | | | | | | | |
| April, Oct & Sept Income Tax Payments Due | | | | | | | | | | | | | |
| Testing Fees (Inventory) | Product Testing Fees | | | | | | | | | | | | |
| Payroll | | | | | | | | | | | | | |
| NJ Payroll | | | 41,558 | 41,558 | 27,040 | | 18,989 | | | | | | 574,261 |
| CA / NC Payroll (Includes some NJ) | | | | | | | | | | | | | 96,485 |
| Fixd Sales Commissions | | | | | | | | | | | | | |
| Payroll | Payroll | | 41,558 | | 27,040 | | 18,989 | | | | | | 670,747 |
| Intercompany | | Amminh (Canada) | | | | | | | | | | | |
| | | Korea | | | | | | | | | | | |
| Total Intercompany | Intercompany | Overseas severence | | | | | | | | | | | |
| Sum Disbursements | | | 83,761 | 120,693 | 38,524 | 23,010 | 22,573 | 6,543 | 125,657 | | 76,000 | 10,000 | 2,676,815 |

## Professional Fees Budget (As disbursed)

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | w/e 03/04/11 | w/e 03/11/11 | w/e 03/18/11 | w/e 03/25/11 | w/e 04/01/11 | w/e 04/08/11 | w/e 04/15/11 | w/e 04/22/11 | w/e 04/29/11 | w/e 05/06/11 | w/e 05/13/11 | w/e 05/20/11 | w/e 05/27/11 | w/e 06/03/11 | w/e 06/10/11 |
| Trustee Legal Counsel | 100% | | | | | | | | | | | | | | | |
| Canada Receiver and Legal | 100% | | | | | | | | | | | | | | | |
| Ch. 7 Trustee Fees | 100% | | | | | | | | | | | | | | | |
| Senior Secured Lender Legal | 100% | | | | | | | | | | | 76,500 | | | | |
| Financial Advisor to Trustee | 100% | | | | | | | | | | | 1,500 | | | | |
| Creditor Comm. Cousel | 100% | | | | | | | | | | 82,500 | 10,191 | | | | |
| Creditor Comm. Financial Advisor | 100% | | | | | | | | | | | | | | | |
| United States Trustee | 100% | | | | | | | | | | | | | | | |
| Noticing Agent | 100% | | | | | | | | | | | | | | | |
| Junior Secured Lender Legal | 100% | | | | | | | | | | | | | | | |
| Financial Advisor (transition) CTG | 100% | | | | | | | | | | | 31,700 | | | | |
| Ch. 7 Trustee Expenses | - | | | | | | | | | | | 5,000 | | | | |
| Privacy Ombudsman | 100% | | | | | | | | | | | | | | | |
| Accountants | 100% | | | | | | | | | | | | | | | |
| Other () | 100% | | | | | | | | | | | | | | | |
| Carve Out/Escrow calculation | 100% | | | | | | | | | | 600,000 | (115,700) | | | | |
| **Totals** | | - | - | - | - | - | - | - | - | - | - | 91,691 | 43,559 | 9,554 | 113,825 | 21,523 |

## Professional Fees Budget (Incurred)

| Month | Retainers | April | May | June | July | August | Sept | Oct | Nov | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Trustee Legal Counsel | | 80,000 | 120,000 | 110,000 | | | | | | 310,000 |
| Canada Receiver and Legal | | | | | | | | | | |
| 2 Ch. 7 Trustee Fees | | | | | | | | | | |
| 3 Senior Secured Lender Legal | | 75,500 | 63,704 | 226,503 | 14,745 | 125,657 | | | | 430,669 |
| Financial Advisor to Trustee | | | 100,000 | 55,000 | 20,000 | | | | | 250,000 |
| 4 Creditor Comm. Cousel | | | 30,000 | 45,000 | 50,000 | | | | | 125,000 |
| 5 Creditor Comm. Financial Advisor | | | | | 30,000 | | | 10,000 | | 40,000 |
| 6 United States Trustee | | | | | | | | | | |
| 7 Noticing Agent | | | | | | | | | | |
| 8 Junior Secured Lender Legal | | 27,200 | 68,400 | | | | | | | 95,600 |
| 9 Financial Advisor (transition) CTG | | | | | | | | | | |
| 10 Privacy Ombudsman | | | | | | | | | | |
| 11 Accountants | | | | | | | | | | |
| Other () | | | | | | | | | | |
| Carve Out/Escrow calculation | | | | | | | | | | |
| **12 Totals** | | 182,200 | 382,104 | 436,503 | 114,745 | 125,657 | | 10,000 | | 1,251,269 |

## Professional Expenses Budget (Incurred)

| Month | Retainers | April | May | June | July | August | Sept | Oct | Nov | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Trustee Legal Counsel | | 2,500 | 2,500 | 2,500 | | | | | | 7,500 |
| Canada Receiver and Legal | | | | | | | | | | |
| 2 Ch. 7 Trustee Fees | | | | | | | | | | |
| 3 Senior Secured Lender Legal | | 1,500 | 1,500 | 1,500 | | | | | | 4,500 |
| Financial Advisor to Trustee | | 1,500 | 2,500 | | | | | | | 4,000 |
| 4 Creditor Comm. Cousel | | | | | | | | | | |
| 5 Creditor Comm. Financial Advisor | | | | | | | | | | |
| 6 United States Trustee | | | | | | | | | | |
| 7 Noticing Agent | | | | | | | | | | |
| 8 Junior Secured Lender Legal | | 4,500 | 10,500 | | | | | | | 15,000 |
| 9 Financial Advisor (transition) CTG | | 5,000 | 5,000 | 5,000 | | | | | | 15,000 |
| 10 Privacy Ombudsman | | | | | | | | | | 15,000 |
| 11 Accountants | | | | | | | | | | |
| Other () | | | | | | | | | | |
| Carve Out/Escrow calculation | | | | | | | | | | |
| **12 Totals** | | 15,000 | 22,000 | 9,000 | | | | | | 46,000 |

## Professional Fees (As disbursed)

| | 16 w/e 06/17/11 | 17 w/e 06/24/11 | 18 w/e 07/01/11 | 19 w/e 07/08/11 | 20 w/e 07/15/11 | 21 w/e 07/22/11 | 22 w/e 07/29/11 | 23 w/e 08/05/11 | 24 w/e 08/12/11 | 25 w/e 08/19/11 | 26 w/e 08/26/11 | 27 w/e 09/02/11 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trustee Legal Counsel | 122,500 | | | | 112,500 | | | 125,687 | | | | | 317,500 |
| Canada Receiver and Legal | | | | | | | | | | | | | |
| Ch. 7 Trustee Fees | 21,602 | 19,396 | | | 3,644 | 3,585 | 1,543 | | | | | | 430,669 |
| Senior Secured Lender Legal | 101,500 | | 50,368 | 5,973 | 58,500 | | | | | | | | 254,500 |
| Financial Advisor to Trustee | 32,500 | | | | 46,000 | | | | | 20,000 | | | 129,000 |
| Creditor Comm. Counsel | | | | | | | | | | 50,000 | | | |
| Creditor Comm. Financial Advisor | | | | | 30,000 | | | | | | | | 40,000 |
| United States Trustee | | | | | | | | | | | | | |
| Noticing Agent - | | | | | | | | | | | | | |
| Junior Secured Lender Legal - | | | | | | | | | | | | | |
| Financial Advisor (transition) CTG | | | | | 5,000 | | | | | | | | 110,600 |
| Ch. 7 Trustee Expenses | | | | | | | | | | | | | 15,000 |
| Privacy Ombudsman | | | | | | | | | | | | | |
| Accountants - | | | | | | | | | | | | | |
| Other () | | | | | | | | | | | | | |
| Carve Out/Escrow calculation | (233,900) | | | | (250,400) | | | | | | | | |
| **Totals** | 128,102 | 19,396 | 50,368 | 5,973 | 2,244 | 3,585 | 1,543 | 125,687 | | 70,000 | | | 1,297,269 |

## Professional Expenses Budget (Incurred)

| | 16 w/e 06/17/11 | 17 w/e 06/24/11 | 18 w/e 07/01/11 | 19 w/e 07/08/11 | 20 w/e 07/15/11 | 21 w/e 07/22/11 | 22 w/e 07/29/11 | 23 w/e 08/05/11 | 24 w/e 08/12/11 | 25 w/e 08/19/11 | 26 w/e 08/26/11 | 27 w/e 09/02/11 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trustee Legal Counsel | | | | | | | | | | | | | |
| Canada Receiver and Legal | | | | | | | | | | | | | |
| Ch. 7 Trustee Fees | | | | | | | | | | | | | |
| Senior Secured Lender Legal | | | | | | | | | | | | | |
| Financial Advisor to Trustee | | | | | | | | | | | | | |
| Creditor Comm. Counsel | | | | | | | | | | | | | |
| Creditor Comm. Financial Advisor | | | | | | | | | | | | | |
| United States Trustee | | | | | | | | | | | | | |
| Noticing Agent - | | | | | | | | | | | | | |
| Junior Secured Lender Legal - | | | | | | | | | | | | | |
| Financial Advisor (transition) CTG | | | | | | | | | | | | | |
| Ch. 7 Trustee Expenses | | | | | | | | | | | | | |
| Privacy Ombudsman | | | | | | | | | | | | | |
| Accountants - | | | | | | | | | | | | | |
| Other () | | | | | | | | | | | | | |
| Carve Out/Escrow calculation | 0 | | | | | | | | | | | | 0 |
| **Totals** | | | | | | | | | | | | | |

**Russ Berrie Companies, Inc.**

**Estimate of trustee fees for Chapter 7 Case**

| Week of petition | 04/29/11 | 05/06/11 | 05/13/11 | 05/20/11 | 05/27/11 | 06/03/11 | 06/10/11 | 06/17/11 | 06/24/11 | 07/01/11 | 07/08/11 | 07/15/11 | 07/22/11 | 07/29/11 | 08/05/11 | 08/12/11 | 08/19/11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week of trustee payment | 05/06/11 | 05/13/11 | 05/20/11 | 05/27/11 | 06/03/11 | 06/10/11 | 06/17/11 | 06/24/11 | 07/01/11 | 07/08/11 | 07/15/11 | 07/22/11 | 07/29/11 | 08/05/11 | 08/12/11 | 08/19/11 | 08/26/11 |
| Funds distrib to pay down secured creditors (1 wk in arrears) | (215,789) | 344,604 | 752,888 | 450,987 | 3,794,164 | 717,428 | 720,058 | 643,529 | 1,676,994 | 199,107 | 131,478 | 115,490 | 31,427 | 4,188,575 | (24) | (70,000) | 13,493,553 |
| Cumulative | | 128,814 | 881,702 | 1,332,788 | 5,126,952 | 5,843,380 | 6,563,438 | 7,206,966 | 8,883,962 | 9,083,069 | 9,304,466 | 9,323,975 | 9,375,402 | 13,543,977 | 13,543,953 | 13,464,953 | 13,493,553 |
| Provision for Chapter 7 Trustee Fees on Distribution to Creditors | | | | | | | | | | | | | | | | | |
| 25% on first $5,000 | - | 1,250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 10% on $5,001 - $50,000 | - | 5,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 5% on $50,001 - $1,000,000 | - | 3,941 | 43,559 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 3% on amount in excess of $1,000,000 | (215,789) | | | 9,954 | 113,825 | 23,523 | 21,602 | 19,306 | 50,308 | 5,973 | 3,644 | 3,585 | 1,543 | 125,657 | - | - | |
| Total trustee fees | | 10,191 | 43,559 | 9,954 | 113,825 | 23,523 | 21,602 | 19,306 | 50,308 | 5,973 | 3,644 | 3,585 | 1,543 | 125,657 | - | - | 430,669 |